SUMMERS, Justice.
 

 Four Negroes, Harold Lee Howard, Theodis Goree, Willie Lee Goree and Roy James Goree, were charged by bill of information in Lincoln Parish with having committed a battery with a dangerous weapon upon Joe Hinton, a white man. They were tried, convicted and sentenced. This-appeal followed.
 

 Several bills of exceptions were reserved' to rulings of the trial court. Our disposition of Bill of Exceptions No. 4 makes unnecessary formal written consideration of the others, which we find to be without merit.
 

 Defendants timely filed a motion to quash the petit jury list, representing by that mo
 
 *889
 
 tion that Negroes were systematically excluded from the general venire and petit jury lists from which the jury was selected that tried defendants. The motion specifically charged, in aid of the contention that Negroes were systematically excluded, that the general venire list from which the petit jury list was drawn did not contain the name of one colored person, although there were qualified Negro voters and other Negroes qualified for jury service, including college professors, merchants and other persons of the Negro race in the Town of Grambling in that parish from which proper Negro jurors could be selected; that the failure to include in the general venire box the names of any Negroes for the past ten years and the failure to include the names of any Negroes on the Grand Jury or Petit Jury for the past ten years, including the jury which tried defendants, constitutes a systematic exclusion of and discrimination against the Negro race and violates the Constitution of the State of Louisiana and the Fourteenth Amendment of the Constitution of the United States. It is further represented that the action of the Jury Commissioners and the Clerk of Court, a member of the Jury Commission, by failing to include the names of any Negroes on the general venire list, deprives the defendants of their constitutional guarantees of due process and equal protection of the laws.
 

 No formal answer to this motion appears to have been filed on behalf of the State.
 

 Upon the trial of this motion to quash, the proces-verbal of the proceedings of the Jury Commission and list of petit jurors selected to try defendants were offered in evidence by defendants; the State and defendants jointly offered the order convening the Jury Commission.
 

 All the witnesses who were called and who testified on the trial of the motion to quash were called by the defendants; the State called none and offered no evidence except the joint offering of the order convening the Jury Commission alluded to above and such facts as were elicited on cross-examination of defendants’ witnesses.
 

 Approximately forty percent of the population of Lincoln Parish are Negroes. The official 1960 census shows a total population of 28,535 of which 11,925 are non-white. The Registrar of Voters testified that on December 31, 1960, prior to the April 1961 trial with which we are concerned, there were 860 qualified colored (Negro) voters and 7,000 qualified white voters. Of the qualified Negro voters, 112 were teachers, 38 were over 65 years of age, 440 were women,
 
 9
 
 were school bus drivers, 61 were students and one was a doctor. There is no showing in the record that any Negro women had declared their desire to be subject to jury service.
 

 This list of registered voters is the list used by the Jury Commission in compiling the general venire from which they drew
 
 *891
 
 petit jury lists. The jury panel in this case was selected from those lists. It is apparent that many of the Negroes of Lincoln Parish were not registered to vote. Jury service, it will he noted, is not dependent upon voting qualifications.
 

 A substantial percentage of those Negroes who were registered to vote resided in Grambling, a town in Lincoln Parish where a state college for Negroes was situated. All of the inhabitants of Grambling, some 3,144, are of the Negro race; they are to a great extent directly or indirectly dependent upon the college and the enterprises which serve that institution, its students and faculty. 1800 of these considered as residents of Grambling are students who, though counted as residents, are not all permanently residing in the parish, many being from localities outside Lincoln Parish. Three of the defendants were students at Grambling College.
 

 The Clerk of Court testified that during almost five years since he occupied the office of Clerk, the name of only one Negro had been drawn on the petit jury list and he did not serve because there were no jury trials during that term.
 

 The general tenor of the testimony of the Jury Commissioners was that they knew of no qualified Negroes whose names they could place on the general venire list, except those who were entitled by law to exemption from jury service because of their occupation or age. It was their practice not to include those persons on the list who were entitled to exemptions.
 

 The Jury Commissioners each explain their failure to select the names of Negroes for inclusion on the general venire list by stating that they sought and selected the names of the men they considered the “best men” for jury duty. Negroes were considered but were not included among those chosen. In most instances those known and considered were among those entitled to exemptions because of their occupations or age and, therefore, were not listed. All of the Jury Commissioners asseverated that they made no choice based upon excluding persons because of their race.
 

 From the testimony of the Jury Commissioners, and others who testified, we think it fair to conclude that there has never been more than one Negro on any jury list in Lincoln Parish within the past ten years or more. Further, that the name of one Negro appeared on the general venire list and none on the petit jury list for the term of court during which defendants were tried.
 

 The trial judge overruled the motion to quash. Bill of Exceptions No. 4 was reserved to that ruling and perfected.
 

 The trial judge assigned reasons for refusing to quash the general venire, finding that the facts failed to establish discrimination against Negroes because of their race.
 
 *893
 
 It was pointed out that the court order directing the Jury Commission to meet and select a jury venire specifically directs that “ * * * no distinction, neither inclusion therein nor exclusion therefrom shall be made on account of race, color, or previous condition of servitude.” Though recognizing the absence of the names of Negroes from the lists, except for one on the general venire; the trial judge felt that the members of the Jury Commission obeyed the mandate of the law directing that “none but good and competent jurors,”
 
 [1]
 
 and “of well known good character and standing in the community”
 
 [2]
 
 should be chosen. It was his opinion that in the discharge of this mandate it was inevitable that the lists would be composed of white persons, not because they were white, but because of the well known fact that the moral standards of the Lincoln Parish Negroes are rather low. Attendance at sessions of that Court, according to the trial judge, “disclosed that the 40 percent of the population who are Negroes commit about 85 percent of the crimes.” Thus, in his opinion, it is not surprising that the Jury Commission in the selection of a comparatively small number of persons having the high qualities needed for jury duty, seldom include more than a small number of Negroes.
 

 He then points out that a very large percentage of the better qualified Negroes residing in Lincoln Parish are ineligible to serve on juries. Many are teachers at Grambling
 
 College
 
 and in the elementary and high schools; some are school bus drivers or in other categories which make them exempt from jury service.
 

 The question thus presented is whether the facts and circumstances of this case establish a systematic inclusion or exclusion of Negroes from the general venire or petit jury lists because of their race.
 

 Principles which forbid discrimination in the selection of juries have been repeatedly asserted in the laws of our state and nation. “It is a right to which every colored man is entitled, that, in the selection of jurors to pass upon his life, liberty, or property, there shall be no exclusion of his race, and no discrimination against them because of their color.”
 
 [3]
 
 “ * * * trial(s) by jury cease to harmonize with our traditional concepts of justice at the very moment particular groups, classes or races — otherwise qualified to serve as jurors in a community — are excluded as such from jury service.”
 
 [4]
 

 These are the principles of “equal protection of the laws” embodied in the Fourteenth Amendment of the Constitution of the United States, and the concept of
 
 *895
 
 “due process of law” in the Bill of Rights of the Constitution of Louisiana (art. 1, § 2), LSA. These guarantees have been recognized and reiterated by the Congress of the United States in Title 18 U.S.C. § 243; “No citizen possessing all other qualifications which are or may be prescribed by law shall be disqualified for service as grand or petit juror in any court of the United States, or of any State on account of race, color, or previous condition of servitude; * * ; and by the Legislature of Louisiana in its declaration that “there shall be no distinction made on account of race, color or previous condition of servitude”
 
 [5]
 
 in the determination of the qualifications to serve as a grand juror or a petit juror.
 

 In 1958 the United States Supreme Court declared: “In an unbroken line of cases stretching back almost 80 years this Court has held that a criminal defendant is denied the equal protection of the laws [as] guaranteed by the Fourteenth Amendment if he is indicted by a grand jury or tried by a petit jury from which members of his race have been excluded because of their race.” Eubanks v. Louisiana, 356 U.S. 584, 78 S.Ct. 970, 2 L.Ed.2d 991. See also 232 La. 289, 94 So.2d 262, cert. granted 355 U.S. 812, 78 S.Ct. 64, 2 L.Ed.2d 30.
 

 This Court has recognized and applied these principles without dissent in State v. Anderson, 205 La. 710, 18 So.2d 33.
 

 The question of what constitutes a sufficient showing of an intentional discrimination in such cases is one of fact, varying in its solution in individual cases. Hernandez v. Texas, 347 U.S. 475, 74 S.Ct. 667, 98 L.Ed. 866.
 

 In the selection of juries the Jury Commission must recognize the minimum qualifications jurors must possess. They are enumerated in LSA-R.S. 15 :172 as follows :
 

 “The qualifications to serve as a grand juror or a petit juror in any of the courts of this state shall be as follows :
 

 “To be a citizen of this state, not less than twenty-one years of age, a bona fide resident of the parish in and for which the court is holden, for one year next preceding such service, able to read and write the English language, not under interdiction or charged with any offense, or convicted at any time of any felony,
 
 provided that there shall he no distinction made on account of race, color or previous condition of servitude;
 
 and provided further, that the district judge shall have discretion to decide upon the competency of jurors in particular cases where from physical infirmity or from relationship, or other causes, the person may be, In the opin
 
 *897
 
 ion of the judge, incompetent to sit upon the trial of any particular case.
 

 “In addition to the foregoing qualifications, jurors shall be persons of well known good character and standing in the community.” (Emphasis added.)
 

 The Jury Commissioners are specifically directed by the language of LSA-R.S. 15 173 to “secure none but good and competent jurors” and provision is made therein to obtain compulsory attendance of witnesses, etc., to effectuate this purpose. Among the categories of persons who are exempt from serving as grand or petit jurors who have been mentioned by the Jury Commissioners in their testimony and which are pertinent to this case are professors, school teachers, school bus drivers, and all persons over sixty-five years of age. (LSA-R.S. 15 :174).
 

 The method to be employed by the Jury Commissioners in the compilation of the general venire and jury lists are set forth in LSA-R.S. 15:179 and LSA-R.S. 15:181, which provide:
 

 “At the time ordered by the district judge, the jury commission shall meet at the office of the clerk of the district court and, in the presence of two or more witnesses, shall select from the persons qualified to serve as jurors for their respective parishes three hundred persons, a list of whom shall be made under the supervision of the commission, and said witnesses. In the preparation of this list, the slips for use in the general venire box, the proces verbal of the meeting, and in all other proceedings of the jury commission, the clerk of court and said commission, may avail itself of the services of a deputy clerk, or of a stenographer, and all names, lists, slips, etc., may be typewritten. This list shall be the general venire list and shall be kept complete and supplemented from time to time as hereinafter enacted. Each of the names on said list shall be written on a separate slip of paper, together with the number of the ward or place of residence of such person, and the slips of paper containing the names selected, except those containing the names of the persons chosen to serve as grand jurors as hereinafter provided, shall be placed in a box which shall be labelled ‘General Venire Box’.” (LSA-R.S. 15:179.)
 

 “Immediately after the selecting of the list of grand jurors, the remaining slips in the general venire box shall be well mixed, and one of the members of the jury commission, in the presence of the others and of the witnesses, shall draw therefrom one at a time the names of thirty persons, or the names of such number of persons not to exceed one hundred as the district judge may direct, to serve as petit jurors for the first week of the next ensuing session of
 
 *899
 
 the court, and if, in the judgment of the commission, a jury for another week may be required, or if the district judge so direct, they shall draw, in the same manner, thirty additional names, or the names of such number of persons not to exceed one hundred as the district judge may direct, to serve as petit jurors during the second or any subsequent week of the session, provided that until such persons so drawn shall have actually served as jurors they may be required by the district judge to perform jury duty any week of the session thereafter ensuing.” (LSA-R.S. 15 :- 181.)
 

 With respect to women, they may not be drawn for jury service unless they have previously filed a declaration of their desire to be subject to service. (LSA-R.S. 15:-. 172.1.)
 

 No complaint is lodged before us by this appeal that our laws are violative of the United States or Louisiana Constitutions;
 
 [6]
 
 it is the manner of the administration of these laws by the Jury Commission that is claimed to be objectionable
 
 [7]
 
 and with this contention we must agree for these reasons :
 

 Including the name of one Negro, and never more, on the general venire list over a period of ten years was a token inelusion of Negroes on that list. The great disparity between this one Negro included on the list and the 40 percent of the population which Negroes represented in Lincoln Parish, coupled with the fact that no Negro had served on a jury in that parish during the past ten years, creates that
 
 prima facie
 
 case of the denial of the equal protection of the laws which the Constitution guarantees. See Norris v. Alabama, 294 U.S. 587, 55 S.Ct. 579, 79 L.Ed. 1074, also, Cf. Cassell v. Texas, 339 U.S. 282, 70 S.Ct. 629, 94 L.Ed. 839, and Pierre v. Louisiana, supra.
 

 This
 
 prima facie
 
 case thus made out required that the State’s attorney come forth with evidence to rebut. He offered no evidence. Avery v. Georgia, 345 U.S. 559, 73 S.Ct. 891, 97 L.Ed. 1244.
 

 In addition to the
 
 prima facie
 
 case there are other circumstances which we feel bolster our views here. We think the testimony is to the effect that the Jury Commissioners did not consider the names of Negroes who were qualified, such as the Negro professors at Grambling College, the school bus drivers, teachers in high schools and persons over sixty-five years of age because those people were entitled under the law to be exempt from jury service. It necessarily follows that in so doing they thereby reduced substantially the number of qualified Negroes who might be included
 
 *901
 
 on the jury lists. They were in error in so doing. The exemption granted by LSA-R.S. 15:174 is personal to those entitled thereto to be claimed by them alone, and the Jury Commission is not authorized by that law to bar those individuals from the jury lists. See State v. Clark, No. 45888 on the docket of this Court decided this day.
 

 We are, moreover, of the view that the Jury Commissioners made no effort to ascertain whether there were Negroes qualified for jury service, other than those personally known to them, and, because few if any were known to them possessing the requisite qualifications, none but the very few they knew in person were considered. The law provided for compulsory attendance of witnesses and the production of documents, etc., before that body, if they chose to invoke that law, to enable a proper inquiry to be made. See LSA-R.S. 15:173 cited supra, also, Cassell v. Texas, supra. Cf. State v. Pierre, 306 U.S. 354, 59 S.Ct. 536, 83 L.Ed. 757. This legal instrumentality which was provided in order that they might expand the list beyond their personal knowledge was not utilized.
 

 It is appropriate to note here that neither general assertions of the Jury Commissioners and the trial judge that there are no Negroes as well qualified as whites and, hence, acting under the mandate of legislative enactments of this State directing the Jury Commission to select “persons of well known good character and standing in the community” and “none but good and competent jurors” (LSA-R.S. 15:172, 173, cited supra), it was inevitable that only white persons would be selected as jurors; nor the fact that the Jury Commissioners stated that they sought to select the “best men” for service can have the effect of proscribing the Negro race from jury service. Hill v. Texas, 316 U.S. 400, 62 S.Ct. 1159, 86 L.Ed. 1559; Brown v. Allen, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469, rehearing denied 345 U.S. 946, 73 S.Ct. 827, 97 L.Ed. 1370.
 

 Here added emphasis is given to this rule where qualified Negroes were shown to be available and where no apparent effort was made by the Jury Commissioners to consider Negroes other than those personally known to them; and where, as in this case, the Jury Commissioners knew very few, if any, of the residents of Grambling, a college town of approximately 3,-000 population, all of whom were Negroes.
 

 We conclude that a systematic exclusion of Negroes from the general venire and petit jury lists has been established.
 

 For the reasons assigned the convictions and sentences are annulled and set aside and the appellants are granted a new trial.
 

 [1]
 

 . LSA-R.S. 15:173.
 

 [2]
 

 . LSA-R.S. 15:172.
 

 [3]
 

 . Virginia v. Rives, 100 U.S. 313, 322, 25 L.Ed. 667.
 

 [4]
 

 . Pierre v. Louisiana, 306 U.S. 354, 358, 59 S.Ct. 536, 83 L.Ed. 757.
 

 [5]
 

 . LSA-R.S. 15:172.
 

 [6]
 

 . Franklin v. South Carolina, 218 U.S. 161, 30 S.Ct. 640, 54 L.Ed. 980.
 

 [7]
 

 . Neal v. Delaware, 103 U.S. 370, 26 L.Ed. 567.