158 So.2d 203 (1963)
245 La. 389
STATE of Louisiana
v.
Willie Lee GOREE et al.
No. 46531.
Supreme Court of Louisiana.
November 12, 1963.
Rehearing Denied December 20, 1963.
Joseph S. Guerriero, Monroe, for defendants and appellants.
Jack P. F. Gremillion, Atty. Gen., M. E. Culligan, Asst. Atty. Gen., Ragan D. Madden, Dist. Atty., James T. Spencer, Asst. Dist. Atty., for appellee.
SANDERS, Justice.
The defendant, Harold Lee Howard, was charged with aggravated battery upon Joe Hinton.
At the first trial, Howard and his co-defendants, Willie Lee Goree, Theodis Goree *204 and Roy James Goree, all negroes, were convicted. The defendants appealed. Having found a systematic exclusion of negroes from the jury bodies, this Court reversed their convictions and remanded the case for a new trial. See State v. Goree, 242 La. 886, 139 So.2d 531.
Upon remand and the overruling of a motion to quash the petit jury venire, the Gorees entered pleas of guilty.
After trial, the jury found the defendant, Harold Lee Howard, guilty as charged. The Court sentenced him to imprisonment in the Louisiana State Penitentiary for a period of four years and six months. From the conviction and sentence, he has again appealed, relying upon five bills of exception reserved in the district court.
Bills of Exception No. 1 was reserved when the trial court overruled defendant's motion to quash the petit jury venire on the ground of systematic exclusion of negroes from the general venire and petit jury list. The motion alleges that approximately 30 negroes were selected for the general venire composed of 300; that the number of negroes on the general venire was insufficient in view of the fact that negroes comprise 44 per cent of the population of Lincoln Parish, where the trial occurred. The defendant further alleges that no negroes were placed on the general venire from the Town of Grambling, a community composed exclusively of negroes. He further complains that only one negro was drawn for the petit jury list, or venire. Based upon these allegations, Howard strenuously contends that he has been deprived of the equal protection of the laws as vouchsafed by the Fourteenth Amendment of the United States Constitution.
The rule is well settled that a defendant is denied equal protection of the laws as guaranteed by the Fourteenth Amendment of the United State Constitution if he is indicted by a grand jury or tried by a petit jury from which members of his race have been excluded because of their race.[1]
Under the contentions raised by the defendant, we are required to determine whether the Jury Commission discriminated against negroes in the formation of the jury bodies. This is a question of fact.[2] The burden of establishing such discrimination rests upon the defendant.[3]
The evidence taken in connection with the motion to quash reflects that approximately 40 per cent of the population of Lincoln Parish are negroes. The Town of Grambling is located in Ward One of the parish. The town has a population of approximately 3000 negroes, including 1500 students who attend Grambling College located there. The defendant, Howard, was himself a student at the College.
Approximately 28 negroes were selected for the general venire, composed of 300 citizens. These were selected from the persons nominated routinely by each of the five Jury Commissioners from the ward or portion of the parish which he represented. At least eleven of the negroes selected were from Ward One. One of them operated a business in Grambling.
The Jury Commission selected five negroes for the grand jury list of 20 members. The evidence does not reflect how many negroes were drawn for the petit jury venire composed of 30 persons. Neither does it disclose how many, if any, negroes *205 served on the petit jury panel that heard the case. However, the record does reflect the procedure followed by the Jury Commission in the formation of the petit jury venire. From the general venire list the Jury Commissioners first selected the list of grand jurors composed of twenty persons, five of whom were negroes.[4] The members of the petit jury venire of thirty (as well as the Tales Jury) were then drawn, one at a time, from the General Venire Box which contained the remaining 280 names on separate slips of paper of uniform size, as provided by LSA-R.S. 15:181.
The defendant does not charge that the Jury Commission used discriminatory or improper procedures in drawing the petit jury venire. Rather, he bases his complaint of systematic exclusion of negroes from the jury bodies on two grounds: firstly, that the number of negroes on the general venire was disproportionate to the negro population of the parish; secondly, that no negroes were selected for the general venire from the Town of Grambling.
The record reflects that a substantial number of negroes were included on the general venire, the basic jury body. That the racial representation did not conform to the population ratio does not of itself violate constitutional safeguards. The law requires only that the jury body be selected without regard to race. It does not mandate percentages.[5]
The Jury Commissioners are charged with the duty of securing "none but good and competent jurors".[6] Among the qualifications required for jury service are a minimum age of 21, citizenship, residence, literacy, no felony charge or conviction, and well known good character and standing in the community.[7] The testimony of the Commissioners is consistent and uncontradicted that they used the same standard in making selections as to all persons. The record negates any notion that any person was excluded from jury service because of race or that any distinction was made because of it.
The defendant also complains that no negroes were selected for the general venire from Grambling, a town composed exclusively of negroes. As we have seen, Grambling is located in Ward One of Lincoln Parish. This ward also contains Ruston, the largest municipality in the parish. The evidence reflects that one negro on the general venire operated a business in Grambling. Many other members of the venire, both white and negro, resided in Ward One. We find no evidence here of systematic exclusion or token inclusion because of race Moreover, the defendant has no legal right to a trial by jurors from a particular portion of the parish.[8]
We find no merit in Bill of Exception No. 1.
Bill of Exception No. 2 was reserved in connection with an objection to certain questions propounded by the district attorney to the witness, Theodos Goree, concerning his testimony at the former trial. The ground of the objection was that the questions referred to the former trial.
The Bill of Exception was reserved prior to the Court's ruling on the objection. Thereafter, the Court sustained the objection to the extent that the district attorney was prohibited from making any reference to the former trial.
*206 The Per Curiam of the trial judge properly disposes of the contentions made here:
"The witness was under cross examination. I know of no legal reason why the District Attorney could not examine him as to former testimony. At any rate, the question was not answered; the Jury was instructed to disregard the question, and the matter was in no way prejudicial to the defendant. Howard."
Bill of Exception No. 3 was reserved when, in his closing argument to the jury, the district attorney stated that each of the four defendants testified to the same story; that they had been well coached; and that he wanted to call the jury's attention to this fact in deciding this case.
Upon defense objection, the trial judge instructed the jury to disregard the statement. Despite this, the defendant complains that the statement was prejudicial and that the effect of it was not cured by the instruction of the judge.
Since the trial judge effectually sustained the objection made by the defendant, the question of the propriety of the ruling excluding the argument is not raised here. The defendant contends only that the prejudice was not removed. We find no substance in this contention. Assuming that the ruling of the trial judge was correct in sustaining the objection (and we express no opinion as to this), all possible prejudice was cured by the judge's timely instruction to the jury to disregard the argument and his later charge to the jury that it was the judge of the veracity of the witnesses.[9]
We conclude that this Bill is without merit.
Bill of Exception 4 was reserved when the trial court overruled defendant's motion in arrest of judgment. Bill of Exception No. 5 was reserved when the trial court overruled the motion for a new trial. These motions reiterate the complaints made in Bill of Exception No. 1, which we have heretofore considered. The motion for a new trial also alleges that the verdict is contrary to the law and the evidence. These Bills present nothing further for review.
For the reasons assigned, the conviction and sentence are affirmed.
HAMLIN, Justice (dissenting).
I believe that Bill of Exceptions No. One, which was reserved when the trial court overruled defendants' Motion to Quash the Petit Jury Panel, is with merit and is dispositive of this prosecution.
The motion was based on the alleged ground that in selecting the names of persons to be placed in the General Venire Box (approximately three hundred), from which the Petit Jury which tried the instant prosecution was drawn, the Jury Commission for the Parish of Lincoln had systematically excluded Negroes, particularly Negroes from the Town of Grambling. It was contended that the alleged exclusion denied defendant the right to be tried by or to have on the Petit Jury sufficient people of his race and color (Negro), and that such denial was discriminatory and deprived him of equal protection of the law within the intent of the Fourteenth Amendment to the United States Constitution.
The testimony of record attached to the instant bill reflects that the Town of Grambling is located mostly in Ward One of Lincoln Parish and is described by its Mayor as an "all colored" town; that it is a college center, being the area where Grambling College (a college for persons of the Negro Race) is located; and, that the name of one Negro (operating a filling station on the outskirts of the Town) from the Town of Grambling was placed in the *207 General Venire from which the Petit Jury which tried defendant was drawn.
William Garner, Registrar of Grambling College since 1928, testified that there were approximately 3,059 students enrolled at the college; that the population of Grambling was 3,144 persons, of which 1,500 were students living in the college dormitories. He described the college personnel as approximately 188 teachers, 8 bus drivers, and 135 general employees. He said that there were about five merchants in Grambling. Garner stated that according to the 1960 United States Census, the population of Lincoln Parish was 41% colored.[1] This witness was over sixty-five years of age; he said that if such age were not a barrier, he would serve if selected as a juror.
Bennie T. Woodward, Mayor of the Town of Grambling and Mathematics Instructor at Grambling College, testified that there were approximately 400 voters in the Town of Grambling. He said that there were approximately twenty-eight business houses in Grambling in which colored persons worked and were employed. In his opinion, 41% of the population of Lincoln Parish was colored. He stated that if he were selected to serve on the jury, he would accept such service.
William Price Goree, an employee of the Soil Conservation Service, United States Department of Agriculture, testified that he lived in the Town of Grambling, and that the last census of the Town reflected that it had a population of approximately 3,000. He stated that he was qualified to serve as a juror and would do so if called.
Calvin Wilkinson, a merchant located at Grambling, testified that Grambling was an "all colored" town in which approximately thirty-two business houses were located, and that about sixty-five to seventy persons worked in these businesses.
Mrs. Wanda G. Gibson, Registrar of Voters for the Parish of Lincoln, testified that at the end of September, 1962, there were 4,699 white voters and 713 colored voters in the Parish of Lincoln.
Leslie C. Ledbetter, Clerk of Court and Ex-Officio Jury Commissioner, Lincoln Parish, testified that there were approximately twenty-five to thirty names of Negroes in the instant General Venire; that no persons were subpoenaed before the Jury Commission to give testimony as to their qualifications.
The gist of the testimony of the five members of the Jury Commission for Lincoln ParishVan L. Pratt, Robert D. Roach, Kenneth Durrett, Elgin Norris, and James P. Hamiltonis to the effect that each Jury Commissioner selected names to be placed in the General Venire from the ward or wards he represented. Their testimony reflects that the names of Negroes were placed in the General Venire, but that no names of residents of the Town of Grambling were included other than the one mentioned supra who operated a filling station on the outskirts of the Town. Some members stated that Grambling was not in the ward or wards they represented; others testified that they saw no reason for placing the names of college professors, doctors, and bus drivers in the General Venire when such persons were entitled to be excused from jury service. The testimony of the Members of the Jury Commission definitely reflects that the names of the residents of the Town of Grambling (such residents being members of the Negro Race) were excluded from the General Venire; the testimony is to the effect that such exclusion was not a purposeful exclusion of persons of the Negro Race.
LSA-R.S. 15:174 provides that professors, school teachers, and school bus drivers *208 are exempt from serving as grand or petit jurors, but that the exemption shall be personal to them; the statute further provides that when such persons do not claim exemption because of their profession or occupation, such failure shall not be sufficient cause for challenge. State v. Clark, 242 La. 914, 140 So.2d 1, Certiorari Denied, 371 U.S. 222, 83 S.Ct. 311, 9 L.Ed. 2d 273; State v. Goree, 242 La. 886, 139 So.2d 531.
LSA-R.S. 15:172 recites that the qualifications for one to serve as a grand juror or a petit juror are that he must be a citizen of this State, not less than twenty-one years of age, a bona fide resident of the parish in and for which the court is holden, for one year next preceding such service, able to read and write the English language, not under interdiction or charged with any offense, or convicted at any time of any felony, provided that there shall be no distinction made on account of race, color or previous condition of servitude.[2]
LSA-R.S. 15:173 provides that in order to secure none but good and competent jurors, the jury commissioners shall have authority to apply to any judge of the district court, in chambers or in open court, for such legal process as may be necessary to secure the attendance of witnesses, and the production of the papers necessary for their investigation as to the competency of jurors.
LSA-R.S. 15:179 sets forth that the Jury Commission shall meet under certain conditions and in the presence of certain witnesses and select from the persons qualified to serve as jurors for their respective parishes three hundred persons, a list of whom shall be made under the supervision of the commission, and said witnesses.
In State v. Evans, 137 La. 379, 68 So. 732, this Court held that jury commissioners have the power and right of selection, and that no defect or irregularity in the manner of selecting the jury shall be sufficient cause for setting aside the venire if it shall not appear that some fraud has been practiced or some great wrong committed in the selection. This Court found that no evil had been committed by the selection of tales jurors from one ward of the parish involved.
In State v. Dunn, 161 La. 532, 109 So. 56, we said that the selection by the jury commission of all the detailibus jurors from one ward, in which a city is situated, is not, in the absence of fraud or evidence of the commission of a great wrong, fatal. See, State v. Bass, 186 La. 139, 171 So. 829; State v. Sheppard, 115 La. 942, 40 So. 363; State v. Connor, 142 La. 583, 77 So. 290; State v. Jackson, 142 La. 636, 77 So. 484.
In State v. Guirlando, 152 La. 570, 93 So. 796, we held that in the absence of any proof of fraud or designed discrimination, it is to be presumed that the jury commissioners performed their duties within the spirit of the law, wisely and well. See, State v. Pierre, 198 La. 619, 3 So.2d 895, Certiorari Denied, 314 U.S. 676, 62 S.Ct. 186, 86 L.Ed. 541.
In the instant matter, I find that the Jury Commission committed a wrong in the selection of the General Venire from which the Petit Jury was drawn to try the defendant. By excluding the names of residents of Grambling, it excluded members of the Negro Race; the Negro population of Grambling constitutes a great part of the Negro population of the Parish of Lincoln. I do not find that any fraud was committed, nor, as stated supra, do I find that the exclusion was purposeful or intentional. I do find, however, that the defendant nevertheless suffered discrimination and that such discrimination, even though unintentional, deprived him of equal protection of the law under the Fourteenth Amendment to the Constitution of the United States.
For the reasons assigned, I respectfully dissent.
*209 McCALEB, Justice (dissenting).
The Town of Grambling, located in Ward 1 of the Parish of Lincoln, has a population of approximately 3,000 negroes. Yet, when selecting the general venire from which the petit jury panel was drawn in this case, not one negro resident was even considered by the Jury Commissioners as available for jury service. This, to my mind, is a plain case of systematic exclusion of members of defendant's race and thus denied him an equal protection of the laws as guaranteed by the Fourteenth Amendment to the Constitution of the United States.
When this matter was here before (see State v. Goree, 242 La. 886, 139 So.2d 531) we stated, in giving our reason for annulling the convictions and sentences and granting the appellants a new trial, the following:
"In addition to the prima facie case there are other circumstances which we feel bolster our views here. We think the testimony is to the effect that the Jury Commissioners did not consider the names of Negroes who were qualified, such as the Negro professors at Grambling College, the school bus drivers, teachers in high schools and persons over sixty-five years of age because those people were entitled under the law to be exempt from jury service. It necessarily follows that in so doing they thereby reduced substantially the number of qualified Negroes who might be included on the jury lists. They were in error in so doing. The exemption granted by LSA-R.S. 15:174 is personal to those entitled thereto to be claimed by them alone, and the Jury Commission is not authorized by that law to bar those individuals from the jury lists. * * *"
Despite the admonition of this Court, the Jury Commissioners paid little or no attention thereto for, in the selection of the general venire after the remand, no consideration was given to a single resident of Grambling notwithstanding that its inhabitants comprised almost one-ninth of the entire population (28,535) of the Parish. Indeed, a reading of the testimony of the Jury Commissioners evidences their attitude. For example, Mr. Van Pratt testified as follows:
"Q. Less than thirty, including the Grand Jury, which was five. Now, Mr. Pratt, why didn't you select any other people from the Town of Grambling? Colored people.
"A. Well, I had no systematic way of doing it. I just selected at random. I knew more people downtown of Ruston. For instance, doctors, school teachers, school bus drivers, I was of the opinion that they were exempt and I later learned there has been a ruling that school teachers are not exempt, but I took this attitude that why select someone who had a legitimate excuse to be excused and to select someone who would have to serve
"Q. And for that reason you didn't recommend school teachers, bus drivers or doctors because you thought they were entitled to be exempt even when you found out that they weren't entitled to be exempt you still wouldn't put any of those names
"A. I understood that that day, but I never did verify it.
"Q. Never did verify it.
"A. Didn't have time to.
"Q. In other words, you thought it would be useless to put those names in the General Venire.
"A. By the same token I didn't put any white ones in there.

*210 "Q. By the same token you didn't put any white
"A. By the same occupation.
"Q. So you, acting on that theory, only put in the General Venire those names that you thought would serve on the jury, is that
"A. Those that I knew to be reputable."
Thus, purposeful exclusion appears manifest according to the standards applied by the Supreme Court of the United States. See Cassell v. Texas, 339 U.S. 282, 70 S.Ct. 629, 94 L.Ed. 839; Eubanks v. Louisiana, 356 U.S. 584, 78 S.Ct. 970, 2 L.Ed.2d 991 and authorities cited in those matters.
I respectfully dissent from the majority ruling on Bill of Exceptions No. 1.
NOTES
[1] Eubanks v. Louisiana, 356 U.S. 584, 78 S.Ct. 970, 2 L.Ed.2d 991; State v. Mack, 243 La. 369, 144 So.2d 363; State v. Goree, 242 La. 886, 139 So.2d 531.
[2] Hernandez v. Texas, 347 U.S. 475, 74 S.Ct. 667. 98 L.Ed. 866; State v. Mack, 243 La. 369, 144 So.2d 363; State v. Goree, 242 La. 886, 139 So.2d 531.
[3] Fay v. New York, 332 U.S. 261, 67 S.Ct. 1613, 91 L.Ed. 2043; Akins v. Texas, 325 U.S. 398, 65 S.Ct. 1276, 89 L.Ed. 1692; State v. Mack, 243 La. 369, 144 So.2d 363; State v. Fletcher, 236 La. 40, 106 So.2d 709.
[4] See LSA-R.S. 15:180.
[5] Cassell v. Texas, 339 U.S. 282, 70 S.Ct. 629, 94 L.Ed. 839; State v. Mack, 243 La. 369, 144 So.2d 363; State v. Perkins, 211 La. 993, 31 So.2d 188. See also State v. Clark, 242 La. 914, 140 So.2d 1 and State v. Green, 221 La. 713, 60 So.2d 208.
[6] LSA-R.S. 15:173.
[7] LSA-R.S. 15:172; State v. Goree, 242 La. 886, 139 So.2d 531.
[8] State v. Guirlando, 152 La. 570, 93 So. 796; State v. Manuel, 133 La. 571, 63 So. 174; State v. Laborde, 120 La. 136, 45 So. 38.
[9] See State v. Dowdy, 217 La. 773, 47 So. 2d 496; State v. Disotell, 181 La. 149, 158 So. 825; and State v. Easley, 118 La. 690, 43 So. 279.
[1] In our previous opinion (State v. Goree, 242 La. 886, 139 So.2d 531), we stated, "Approximately forty percent of the population of Lincoln Parish are Negroes. The official 1960 census shows a total population of 28,535 of which 11,925 are non-white."
[2] The statute does not recite that one has to be a registered voter.