HAMLIN, Justice
(dissenting).
I believe that Bill of Exceptions No. One, which was reserved when the trial court overruled defendants’ Motion to Quash the Petit Jury Panel, is with merit and is dispositive of this prosecution.
The motion was based on the alleged ground that in selecting the names of persons to be placed in the General Venire Box (approximately three hundred), from which the Petit Jury which tried the instant prosecution was drawn, the Jury Commission for the Parish of Lincoln had systematically excluded Negroes, particularly Negroes from the Town of Grambling. It was contended that the alleged exclusion denied defendant the right to be tried by or to have on the Petit Jury sufficient people of his race and color (Negro), and that such denial was discriminatory and deprived him of equal protection of the law within the intent of the Fourteenth Amendment to the United States Constitution.
The testimony of record attached to the instant bill reflects that the Town of Grambling is located mostly in Ward One of Lincoln Parish and is described by its Mayor as an “all colored” town; that it is a college center, being the area where Grambling College (a college for persons of the Negro Race) is located; and, that the name 6f one Negro (operating a filling station on the outskirts of the Town) from the Town of Grambling was placed in the General Venire from which the Petit Jury which tried defendant was drawn.
William Garner, Registrar of Grambling College since 1928, testified that there were approximately 3,059 students enrolled at the college; that the population of Grambling was 3,144 persons, of which 1,-500 were students living in the college dormitories. He described the college personnel as approximately 188 teachers, 8 bus drivers, and 135 general employees. He said that there were about five merchants in Grambling. Garner stated that according to the 1960 United States Census, the population of Lincoln Parish was 41% colored.[1] This witness was over sixty-five years of age; he said that if such age were not a *402 barrier, he would serve if selected as a juror.
Bennie T. Woodward, Mayor of the Town of Grambling and Mathematics Instructor at Grambling College, testified that there were approximately 400 voters in the Town of Grambling. He said that there were approximately twenty-eight business houses in Grambling in which colored persons worked and were employed. In his opinion, 41% of the population of Lincoln Parish was colored. He stated that if he were selected to serve on the jury, he would accept such service.
William Price Goree, an employee of the Soil Conservation Service, United States Department of Agriculture, testified that he lived in the Town of Grambling, and that the last census of the Town reflected that it had a population of approximately 3,000. He stated that he was qualified to serve as a juror and would do so if called.
Calvin Wilkinson, a merchant located at Grambling, testified that Grambling was an “all colored” town in which approximately thirty-two business houses were located, and that about sixty-five to seventy persons worked in these businesses.
Mrs. Wanda G. Gibson, Registrar of Voters for the Parish of Lincoln, testified that at the end of September, 1962, there were 4,699 white voters and 713 colored voters in the Parish of Lincoln.
Leslie C. Ledbetter, Clerk of Court and Ex-Officio Jury Commissioner, Lincoln Parish, testified that there were approximately twenty-five to thirty names of Negroes in the instant General Venire; that no persons were subpoenaed before the Jury Commission to give testimony as to their qualifications.
The gist of the testimony of the five members of the Jury Commission for Lincoln Parish — Van L. Pratt, Robert D. Roach, Kenneth Durrett, Elgin Norris, and James P. Hamilton — is to the effect that each Jury Commissioner selected names to be placed in the General Venire from the ward or wards he represented. Their testimony reflects that the names of Negroes were placed in the General Venire, but that no names of residents of the Town of Grambling were included other than the one mentioned supra who operated a filling station on the outskirts of the Town. Some members stated that Grambling was not in the ward or wards they represented; others testified that they saw no reason for placing the names of college professors, doctors, and bus drivers in the General Venire when such persons were entitled to be excused from jury service. The testimony of the Members of the Jury Commission definitely reflects that the names of the residents of the Town of Grambling (such residents being members of the Negro Race) were excluded from the General Venire; the testimony is to the *404 effect that such exclusion was not a purposeful exclusion of persons of the Negro Race.
LSA-R.S. 15:174 provides that professors, school teachers, and school bus drivers are exempt from serving as grand or petit jurors, but that the exemption shall be personal to them; the statute further provides that when such persons do not claim exemption because of their profession or occupation, such failure shall not be sufficient cause for challenge. State v. Clark, 242 La. 914, 140 So.2d 1, Certiorari Denied, 371 U.S. 222, 83 S.Ct. 311, 9 L.Ed.2d 273; State v. Goree, 242 La. 886, 139 So.2d 531.
LSA-R.S. 15:172 recites that the qualifications for one to serve as a grand juror or a petit juror are that he must be a citizen of this State, not less than twenty-one years of age, a bona fide resident of the parish in and for which the court is holden, for one year next preceding such service, able to read and write the English language, not under interdiction or charged with any offense, or convicted at any time of any felony, provided that there shall be no distinction made on account of race, color or previous condition of servitude.[2]
LSA-R.S. 15 :173 provides that in order to secure none but good and competent jurors, the jury commissioners shall have authority to apply to any judge of the district court, in chambers or in open court, for such legal process as may be necessary to secure the attendance of witnesses, and the production of the papers necessary for their investigation as to the competency of jurors.
LSA-R.S. 15:179 sets forth that the Jury Commission shall meet under certain conditions and in the presence of certain witnesses and select from the persons qualified to serve as jurors for their respective parishes three hundred persons, a list of whom shall be made under the supervision of the commission, and said witnesses.
In State v. Evans, 137 La. 379, 68 So. 732, this Court held that jury commissioners have the power and right of selection, and that no defect or irregularity in the manner of selecting the jury shall be sufficient cause for setting aside the venire if it shall not appear that some fraud has been practiced or some great wrong committed in the selection. This Court found that no evil had been committed by the selection of tales jurors from one ward of the parish involved.
In State v. Dunn, 161 La. 532, 109 So. 56, we said that the selection 'by the jury commission of all the detailibus jurors from one ward, in which a city is situated, is not, in the absence of fraud or evidence of the commission of a great wrong, fatal. See, State v. Bass, 186 La. 139, 171 So. 829; *406 State v. Sheppard, 115 La. 942, 40 So. 363; State v. Connor, 142 La. 583, 77 So. 290; State v. Jackson, 142 La. 636, 77 So. 484.
In State v. Guirlando, 152 La. 570, 93 So. 796, we held that in the absence of any proof of fraud or designed discrimination, it is to be presumed that the jury commissioners performed their duties within the spirit of the law, wisely and well. See, State v. Pierre, 198 La. 619, 3 So.2d 895, Certiorari Denied, 314 U.S. 676, 62 S.Ct. 186, 86 L.Ed. 541.
In the instant matter, I find that the Jury Commission committed a wrong in the selection of the General Venire from which the Petit Jury was drawn to try the defendant. By excluding the names of residents of Grambling, it excluded members of the Negro Race; the Negro population of Grambling constitutes a great part of the Negro population of the Parish of Lincoln. I do not find that any fraud was committed, nor, as stated supra, do I find that the exclusion was purposeful or intentional. I do find, however, that the defendant nevertheless suffered discrimination and that such discrimination, even though unintentional, deprived him of equal protection of the law under the Fourteenth Amendment to the Constitution of the United States.
For the reasons assigned, I respectfully dissent.

. In our previous opinion (State v. Goree, 242 La. 886, 139 So.2d 531), we stated, “Approximately forty percent of the population of Lincoln Parish are Negroes. The official 1960 census shows a total population of 28,535 of which 11,925 are nonwhite.”

. The statute does not recite that one has to be a registered voter.