McCALEB, Justice
(dissenting).
The Town of Grambling, located in Ward 1 of the Parish of Lincoln, has a population of approximately 3,000 negroes. Yet, when selecting the general venire from which the petit jury panel was drawn in this case, not one negro resident was even considered by the Jury Commissioners as available for jury service. This, to my mind, is a plain case of systematic exclusion of members of defendant’s race and. thus denied him an equal protection of the laws as guaranteed by the Fourteenth Amendment to the Constitution of the United States.
When this matter was here before (see State v. Goree, 242 La. 886, 139 So.2d 531) we stated, in giving our reason for annulling the convictions and sentences and granting the appellants a new trial, the following:
“In addition to the prima facie case there are other circumstances which we feel bolster our views here. We think the testimony is to the effect that the Jury Commissioners did not consider the names of Negroes who were qualified, such as the Negro professors at Grambling College, the school bus drivers, teachers in high schools and persons over sixty-five years of age because those people were entitled under the law to be exempt from jury service. It necessarily follows that in so doing they thereby reduced substan *408 tially the number of qualified Negroes who might be included on the jury lists. They were in error in so doing. The exemption granted by LSA-R.S. 15 :- 174 is personal to those entitled thereto to be claimed by them alone, and the Jury Commission is not authorized by that law to bar those individuals from the jury lists. * * * ”
Despite the admonition of this Court, the Jury Commissioners paid little or no attention thereto for, in the selection of the general venire after the remand, no consideration was given to a single resident of Grambling notwithstanding that its inhabitants comprised almost one-ninth of the entire population (28,535) of the Parish. Indeed, a reading of the testimony of the Jury Commissioners evidences their attitude. For example, Mr. Van Pratt testified as follows:
“Q. Less than thirty, including the Grand Jury, which was five. Now, Mr. Pratt, why didn’t you select any other people from the Town of Grambling? Colored people.
“A. Well, I had no systematic way of doing it. I just selected at random. I knew more people downtown of Ruston. For instance, doctors, school teachers, school bus drivers, I was of the opinion that they were exempt and I later learned there has been a ruling that school teachers are not exempt, but I took this attitude that why select someone who had a legitimate excuse to be excused and to select someone who would have to serve—
"Q. And for that reason you didn’t recommend school teachers, bus drivers or doctors because you thought they were entitled to be exempt even when you found out that they weren’t entitled to be exempt you still wouldn’t put any of those names—
“A. I understood that that. day, but I never did verify it.
“Q. Never did verify it.
“A. Didn’t have time to.
“Q. In other words, you thought it would be useless to put those names in the General Venire.
“A. By the same token I didn’t put any white ones in there.
"Q. By the same token you didn’t put any white — ■
“A. By the same occupation.
“Q. So you, acting on that theory, only put in the General Venire those names that you thought would serve on the jury, is that—
*410 “A. Those that I knew to be reput-, able.”
Thus, purposeful exclusion appears manifest according to the standards applied by the Supreme Court of the United States. See Cassell v. Texas, 339 U.S. 282, 70 S.Ct. 629, 94 L.Ed. 839; Eubanks v. Louisiana, 356 U.S. 584, 78 S.Ct. 970, 2 L.Ed.2d 991 and authorities cited in those matters.
I respectfully dissent from the majority ruling on Bill of Exceptions No. 1.