In the Matter of Lester NEWTON on Application for Writ of Habeas Corpus.
Civ. A. No. 8575.

United States District Court
W. D. Louisiana,
Alexandria Division.
Dec. 6, 1963.

Gravel, Sheffield & Fuhrer, Alexandria, La., for petitioner.

F. Jean Pharis, Dist. Atty., Alexandria, La., Jack P. F. Gremillion, Atty. Gen., State of Louisiana, Baton Rouge, La., for State of Louisiana.

HUNTER, District Judge.

Newton, a Negro, was indicted, tried and convicted in a Louisiana criminal court on a charge of rape. On June 23, 1960, he was sentenced to death. Following the overruling of his motion for a new trial and his motion in arrest of judgment, Newton perfected an appeal to the Louisiana Supreme Court. The conviction and sentence were affirmed by the Supreme Court of Louisiana on March 20, 1961. That Court denied a motion for re-hearing and the Supreme Court of the United States denied a petition for certiorari. His Excellency, the Governor of Louisiana, on October 23, 1961, issued a death warrant to the Warden of the Louisiana State Penitentiary, ordering that Newton be executed on November 17, 1961. A petition for writ of habeas corpus was first filed here on November 7, 1961. This Court granted the writ of habeas corpus to the extent of staying the execution of Newton, pending prompt institution and prosecution of habeas corpus and/or appropriate

proceedings in the courts of Louisiana and retained jurisdiction for further appropriate proceedings. After varied proceedings, Newton, on or about January 16, 1963, sought to amend his petition for habeas corpus by asserting that Negroes were systematically excluded from the grand jury which indicted and from the petit jury which convicted him. This Court refused to allow the amendment because Newton had not raised in the state courts these asserted denials of constitutional rights. Subsequently, these allegations were made in State Court. Louisiana requires that objections to the composition of a jury, either grand or petit, must be raised before the expiration of the third judicial day following the end of the Grand Jury's term on or before trial, whichever is earlier.[1] The objections here were not filed until after sentence, and thus it is that the Louisiana courts could not, under Louisiana law, afford Newton any relief. Thereupon he renewed here his allegations that Negroes were systematically excluded from the Grand Jury which indicted him and from the Petit Jury which convicted.

In an unbroken line of cases the Supreme Court of the United States and the Supreme Court of Louisiana have held that a criminal defendant is denied the equal protection of laws guaranteed by the Fourteenth Amendment if he is indicted by a grand jury or tried by a petit jury from which members of his race have been excluded because of their race.[2] It is agreed that in the ten years

1. Louisiana Code of Criminal Procedure, LSA–Revised Statutes 15:202, provides:

"§ 202. Time for urging objections to array; waiver

"All objections to the manner of selecting or drawing any juror or jury or to any defect or irregularity that can be pleaded against any array or venire must be filed, pleaded, heard or urged before the expiration of the third judicial day of the term for which said jury shall have been drawn, or before entering upon the trial of the case if it be begun sooner; otherwise, all such objections shall be considered as waived and shall not afterwards be urged or heard."

2. Strauder v. West Virginia, 100 U.S. 303, 25 L.Ed. 664; Neal v. Delaware, 103 U.S. 370, 26 L.Ed. 567; Gibson v. Mississippi, 162 U.S. 565, 16 S.Ct. 904, 40 L.Ed. 1075; Carter v. Texas, 177 U.S. 442, 20 S.Ct. 687, 44 L.Ed. 839; Rogers v. Alabama, 192 U.S. 226, 24 S.Ct. 257, 48 L.Ed. 417; Martin v. Texas, 200 U.S. 316, 26 S.Ct. 338, 50 L.Ed. 497; Norris v. Alabama, 294 U.S. 587, 55 S.Ct. 579, 79 L. Ed. 1074; Hale v. Commonwealth of Kentucky, 303 U.S. 613, 58 S.Ct. 753, 82 L.Ed. 1050; Pierre v. Louisiana, 306 U.S. 354, 59 S.Ct. 536, 83 L.Ed. 757; Smith v. Texas, 311 U.S. 128, 61 S.Ct. 164, 85 L.Ed. 84; Hill v. Texas, 316 U.S. 400, 62 S.Ct. 1159, 86 L.Ed. 1559;

immediately preceding Newton's indictment, including the Grand Jury which indicted Newton, there had been only one Negro on a grand jury in Rapides Parish. That was in 1950. The facts concerning the petit juries have been stipulated to.

Had Newton challenged the validity of the indictment prior to his trial, it would have been quashed by the Louisiana District Court. The Rapides Parish District Court—the Court whose jury system is here under attack—has on at least two occasions decreed that there had been a systematic exclusion of Negroes from the Grand Jury of Rapides Parish during the same period here involved. Judge Humphries' opinion of October 9, 1962, in State v. Baggett, is attached and made a part hereof.* This Court adopts that opinion as its own, and on the facts stipulated here, is reluctantly forced to conclude that the uniform and long-continued exclusion of Negroes from grand juries cannot be attributed to chance, accident, or to the fact that no sufficiently qualified Negroes have been ever included in the lists submitted to the state district judges.

While this Court is conscious of its fallibility, it is firm in its opinion that this record in the Supreme Court of Louisiana or of the United States would support no other ruling except a ruling that there had been systematic exclusion of Negroes from grand juries in Rapides Parish because of race and color and in violation of the Fourteenth Amendment, inclusive of the Grand Jury which returned the indictment against Newton.

■ Do federal courts have a duty under the federal Habeas Statute to grant relief despite the applicant's failure to have pursued a state remedy not available to him at the time he applies for it? The answer is yes. Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837; United States ex rel. Seals v. Wiman (5 Cir.), 304 F.2d 53.

■ There is a discretion to refuse relief because of failure to comply with state procedures, but Noia makes it clear that such discretion is very limited,

"If a habeas applicant, after consultation with competent counsel or otherwise, understandingly and knowingly forwent the privilege of seeking to vindicate his federal claims in the state courts, whether for strategic, tactical, or any other reasons that can fairly be described as the deliberate by-passing of state procedures, then it is open to the federal court on habeas to deny him all relief if the state courts refuse to entertain his federal claims on the merits * * *. A choice made by counsel not participated in by the petitioner does not automatically bar relief. Nor does the state court's finding of waiver bar independent determination of the question by the federal courts on habeas."

The application of the standard we have quoted from Noia to the facts here is not difficult. Under no reasonable view can it be said that Newton's failure to timely raise the challenge to the jury constituted an intelligent and voluntary waiver by *him* of his constitutional rights. The record is clear that this specific question was not even discussed with him until after his conviction. Is he to meet his death because timely objection was not filed to the composition of the Grand Jury? We think not.

■ Federal courts do have an obligation to enforce federal rights. These rights are set forth in the same Constitution that contains the Tenth Amend-

Akins v. Texas, 325 U.S. 398, 65 S.Ct. 1276, 89 L.Ed. 1692; Patton v. Mississippi, 332 U.S. 463, 68 S.Ct. 184, 92 L.Ed. 76; Cassell v. Texas, 339 U.S. 282, 70 S.Ct. 629, 94 L.Ed. 839; Hernandez v. Texas, 347 U.S. 475, 74 S.Ct. 667, 98 L.Ed. 866; Reece v. Georgia, 350 U.S. 85, 76 S.Ct. 167, 100 L.Ed. 77; Eubanks v. Louisiana, 356 U.S. 584, 78 S.Ct. 970, 2 L.Ed.2d 991; United States ex rel. Seals v. Wiman, 304 F.2d 53 (5 Cir.); State v. Goree, 242 La. 886, 139 So.2d 531 (S.Ct.La.)

* See Appendix.

ment (which reserves to the states legitimate and important functions of local government. It is vital that federal courts strive diligently not to trespass upon this state function. This is a very delicate matter. In an endeavor to put this case in proper perspective it is appropriate to dispel the thought that there is any basic difference between state and federal jurisprudence on the fundamental issues involved.

■ This Court fully appreciates that the selection of grand juries in Rapides Parish throughout the years has been controlled by the general thinking of the people. There is judicial agreement that prior to and including the date of Newton's indictment Negroes were excluded from Rapides Parish Grand Juries. There is judicial agreement that this would void the indictment if timely raised. The Louisiana Law requires it to be raised before trial. Under federal law and under the facts of this case, with all deference, we cannot agree that Newton waived his rights when his lawyers failed to object upon his trial and must accordingly be executed.

We find it not necessary to pass on other issues, but for the record we relate some of the factual background. On the night of the alleged attack, July 4, 1959, the prosecutrix had been driving her automobile alone and visiting several cocktail lounges in Alexandria, Louisiana. Around midnight she left the Shamrock Dancing Club for white people that is located in a predominately Negro section on the outskirts of the city. She had been drinking only coca-colas. While driving her automobile from the club through a very dark crowded dirt road through the Negro quarters, she allegedly came upon a Negro man standing near a parked car in the right lane of the road. She stopped her vehicle and the man came to the right side of her car, opened the door and stated he wanted some information. We quote her testimony, in part:

"Q    What, if anything, did you do when you saw the car?

"A    I was driving only five or ten miles an hour, just as slow as you could creep along the road was very bad, and I pulled to the left to go around the automobile and when I did that man was standing beside it motioning for me to stop and grabbed a hold of my door handle. I stopped.

"Q    Did you know or had you ever seen the man before?

"A    No, sir.

"Q    Have you ever seen him since?

"A    Well, yes, I mean, after he was arrested I recognized him—

\*    \*    \*

"Q    Now what happened after this individual had stopped you and has his hand on the door handle of your car?

"A    He opened the door.

"Q    He opened the door.

"A    And asked me, ah, he said, 'I want some information.' And God created us all equal so I didn't think a thing about it. I said, 'What kind of information?' And he said, 'Just information.' I said, 'Well, what kind?' He said, 'Well, let me go turn off my car lights.' By that time I knew that it wasn't any play about it, he didn't want any information he could have asked me with his car lights on, \*    \*    \*".

The man then entered the car, sat beside the prosecutrix, allegedly held a knife and a gun to her and told her to drive on. She drove down the road under instructions to a place where she stopped. Then at gun point she was ordered to the rear seat and forced at knife point to submit. Newton denies he was there at all. The prosecutrix is the only witness. The District Attorney was fair and just in his presentation of the case.

## CONCLUSION

Negroes were systematically excluded from the Grand Jury which indicted

Newton. His conviction is unconstitutional and is declared to be void and of no effect. Nonetheless, this decision does not open any prison doors to Newton. The State may now legally detain him to await the action of another grand jury upon the crime of rape with which he is charged. Newton is, of course, entitled to be tried within a reasonable time, and this Court will retain jurisdiction to meet the unlikely event that further orders and judgments may be necessary or proper. This Court expresses its present opinion that a period of ten months from and after the entry of this judgment or its final test by appeal, certiorari or otherwise, will be sufficient to afford the State of Louisiana an opportunity to take the necessary steps to re-indict and re-try Newton. If Newton is re-indicted and re-tried, and if any question should arise as to the legality or constitutionality of such indictment or trial, that should be decided not by this Court, but in the regular course by the Courts of the State of Louisiana. The writ of habeas corpus is granted to the extent stated.

## APPENDIX
### "NUMBER 52,117"

"STATE OF LOUISIANA VS. SAM BAGGETT"

"NINTH JUDICIAL DISTRICT COURT PARISH OF RAPIDES STATE OF LOUISIANA"

"RULING OF THE COURT"

(Judge Humphries):

"The accused in this case being a male member of the colored race, accused of having murdered a colored woman, files before trial a motion to quash the indictment upon several grounds, one of which is a motion to quash on the grounds that members of the colored race were systematically excluded from the Grand Jury. For proof he relies upon the absence of any members of the colored race on the Grand Jury for many years dating back for thirty three and one half years, with the exception of one instance in 1950. There was no showing that there was any conspiracy or plan between members of the Jury Commission to exclude negroes from the Grand Jury panel. With regard to that, the question has been well answered in the case of 'The State Vs. Goree,' decided by the Louisiana Supreme Court on March 26th., 1962. That case was one where four negroes had been indicted and tried for aggravated battery. The same motion was filed in that case in the lower Court and denied by the District Judge. The defendant took an appeal to the Supreme Court contending that under the Louisiana law, the Louisiana Constitution and the Statute, that the indictment was invalid because negroes had been excluded from the Grand Jury panel and the General Venire list. There was a showing in the Goree case that within a period of—within the past ten years only one colored person had been called or been included on any jury list. The Louisiana Supreme Court decided the Goree case was based entirely upon Louisiana Law without resorting to the provisions of the Federal Constitution or the Federal Statutes. Louisiana Law on this particular issue is revised Statute 15:172 [LSA], which, in part, provided, 'provided that there shall be no distinction made on account of race, color or previous condition of servitude.' In its reasoning for the decision the Louisiana Supreme Court stated: ' "Including the name of one negro, and never more, on the General Venire list over a period of ten years was a token inclusion of Negroes on that list. The great disparity between this one negro included on the list and the forty percent of the population which Negroes represented in Lincoln Parish, (in our Parish there is a thirty percent

ratio) coupled with the fact that no negro had served on a jury in that Parish during the past ten years, creates that prima facie case of the denial of the equal protection of the laws which the Constitution guarantees. This prima facie case thus made out required that the State's Attorney come forth with evidence to rebut. He offered no evidence. In addition to the prima facie case there are other circumstances which we feel bolster our views here. We think the testimony is to the effect that the Jury Commissioners did not consider the names of Negroes who were qualified, such as the Negro professors at Grambling College, the school bus drivers, teachers in high schools, and persons over sixty five years of age, because those people were entitled under the law to be exempt from Jury service. It necessarily follows that in doing so, they thereby reduced substantially the number of qualified Negroes who might be included on the jury lists. They were in error in so doing. The exemption granted by [LSA–] R.S. 15:174 is personal to those entitled thereto, to be claimed by them alone, and the Jury Commission is not authorized by that law to bar those individuals from the jury lists." Now in stating that even though jurors and Jury Commissioners acting under the law to select even the best qualified persons to serve on the Grand Jury and in doing so they necessarily selected all persons of the white race, the Court answered in this way: "We are, moreover, of the view that the Jury Commissioners made no effort to ascertain whether there were Negroes qualified for jury service, other than those personally known to them, and, because few, if any, were known to them possessing the requisite qualifications, none but the very few they knew in person were considered. The law provided for compulsory attendance of witnesses and the production of documents, etc., before that body, if they chose to invoke that law, to enable a proper inquiry to be made. This legal instrumentality, which was provided in order that they might expand the list beyond their personal knowledge, was not utilized. It is appropriate to note here that neither general assertions of the Jury Commissioners and the trial Judge that there are no Negroes as well qualified as whites and, hence, acting under the mandate of legislative enactments of this State directing the Jury Commission to select 'persons of well known good character and standing in the community' and 'none but good and competent jurors,' it was inevitable that only white persons would be selected as jurors; nor the fact that the Jury Commissioners stated that they sought to select the 'best men' for service can have the effect of proscribing the Negro race from jury service." '

"With the facts before the Court at this time, the Court is of the opinion, factually, that this case is similar to the case of 'State v. Goree.' That being the situation, then, this Court is called upon to rule in this manner, based upon the law as found in our Statutes and interpreted by the Louisiana Supreme Court. To deny the motion, I do not think that we would be intellectually honest with ourselves. Furthermore, it would result only in a time consuming, very expensive trial amounting into the thousands of dollars, only to have it come back to this Parish for retrial.

"The Court is of the opinion that the motion to quash is well founded and the motion to quash the indictment against Sam Baggett is granted. That motion to quash the indictment being sustained there is no necessity to pass upon the other issues raised in the motion.

"BY MR. D'ANGELO: Your Honor, at this time the State would like to object to the ruling of the Court and reserve a bill of exception with the Court's ruling attached to it, the motion, the testimony taken, and reasons given by the Court.

"BY THE COURT: Let a bill be reserved."