**UNITED STATES of America ex rel. Adam Amos MACK, Jr., and Shelton Williams**

v.

**Victor G. WALKER, Warden, Louisiana State Penitentiary.**

**No. 715.**

United States District Court
E. D. Louisiana,
Baton Rouge Division.

July 9, 1964.

James Domengeaux, Bob F. Wright, Domengeaux & Wright, Lafayette, La., for Adam Amos Mack, Jr.

Jacob S. Landry, A. J. Resweber, New Iberia, La., for Shelton Joseph Williams.

Jack P. F. Gremillion, Atty. Gen., Teddy W. Airhart, Jr., Asst. Atty. Gen., Baton Rouge, La., Knowles M. Tucker, Dist. Atty., New Iberia, La., for respondent.

WEST, District Judge.

Petitioners, Adam Amos Mack, Jr. and Shelton Williams, both of whom are presently incarcerated in the Louisiana State Penitentiary awaiting the death penalty for the crime of murder, petitioned this Court for the issuance of a writ of habeas corpus. Upon receipt of complainants' petition, this Court held a conference with the attorneys involved and counsel for petitioners were instructed to present to the Court, at one time, *all* of the grounds upon which petitioners intended to rely to sustain their claims that their constitutional rights have been violated. Thereafter the Court was inform-

ed by petitioners' counsel that they contend that their constitutionally guaranteed rights have been violated in the following respects:

(1) There was a systematic inclusion of a limited number of Negroes on the grand and petit jury lists.

(2) They were refused a complete transcript of their trial proceedings for use by them on appeal or otherwise.

(3) Their confessions were obtained at a time when they were not represented by counsel, and their confessions were untimely published.

It was agreed that these alleged grounds constituted all of the grounds upon which petitioners rely in support of their application for the issuance of a writ of habeas corpus. Petitioners were offered an evidentiary hearing, but they, through their counsel, agreed that there was nothing that they wished to produce in open court in the way of testimony or other evidence, and they requested that the matter be submitted for decision on the record, including the available transcript of the trial court proceedings, available affidavits, depositions, such interrogatories and answers as either party wished to file, and briefs of counsel. This matter has now been considered by the Court on the record as thus constituted, and the Court concludes that the application of petitioners for the issuance of a writ of habeas corpus must be denied for the following reasons.

On the evening of June 25, 1960, one Elier Duhon, a grocery store operator in New Iberia, Louisiana, was bludgeoned to death in his store during a robbery. Petitioners were apprehended early the following morning and charged with murder. Each made a written confession. On January 5, 1961, the Iberia Parish Grand Jury returned an indictment against both petitioners for murder. A motion to quash the indictments was subsequently filed on behalf of both petitioners, and on April 6, 1961, the State District Court quashed the indictments on the ground that there had been a systematic exclusion of Negroes from the grand jury which had indicted petition-

ers. The Court discharged the entire grand jury panel, and ordered the jury commissioners to empty the general venire box of all names. The jury commissioners were further ordered to refill the general venire box according to law and without regard to the race or color of prospective jurors, and to proceed to select therefrom twenty citizens, qualified according to law, to serve as grand jurors. This was done, and on April 24, 1961, the new grand jury, composed of ten white citizens and two Negro citizens, whose names were drawn by lot from the grand jury panel of names, returned an indictment against petitioners charging them with murder. Petitioners were then tried, and on June 23, 1961, found guilty as charged. During the trial, several bills of exception were reserved, and an appeal was ultimately taken to the Louisiana Supreme Court. That Court, on June 29, 1962, affirmed the conviction and sentence. Available state court remedies having thus been exhausted, petitioners filed this application for the issuance of a writ of habeas corpus on the grounds previously enumerated herein.

■ The issue of whether or not the second grand jury which indicted petitioners was constitutionally constituted was presented to the Louisiana Supreme Court on appeal and was thoroughly considered by that Court, as were the other two grounds herein relied upon by petitioners. State of Louisiana v. Adam Amos Mack, Jr., et al., 243 La. 369, 144 So.2d 363; cert. denied 373 U.S. 917, 83 S.Ct. 1306, 10 L.Ed.2d 416. Because of the fact that the opinion rendered therein by the Supreme Court of Louisiana so completely accords with this Court's opinion, its opinion will, in pertinent part, be adopted now as the opinion of this Court. In connection with the issues herein presented, the Louisiana Supreme Court, after its review of the entire record on appeal, said, 144 So.2d p. 366 et seq.:

"Bill of Exception No. 2 (Mack) and Bill of Exception No. 1 (Williams) were reserved to the overruling by the trial judge of a motion to quash the indictment, general venire, grand

jury panel, and petit jury panel based upon racial discrimination in the drawing and selection of the juries. The evidence taken on the motion was made part of the bills of exception. "Specifically, the defendants contend that under the procedures used by the Jury Commission there was a planned limitation of the number of Negroes placed on the general venire and jury-bodies in violation of the constitution and laws of the United States and this state.

"The law is well settled that a defendant is denied the equal protection of the laws guaranteed by the Fourteenth Amendment if he is indicted by a grand jury or tried by a petit jury from which members of his race have been excluded because of their race. Such racial discrimination is likewise prohibited by state law. The law requires that a jury be selected without regard to race. This Court has recognized and applied these principles.

"Under the command of the law prohibiting racial discrimination in the selection of juries, a planned limitation of the number selected to serve on a jury body imposed on the basis of race is forbidden.

"In Cassell v. Texas, 339 U.S. 282, 70 S.Ct. 629, 94 L.Ed. 839, the Supreme Court of the United States declared:

"'* * * Proportional racial limitation is therefore forbidden. An accused is entitled to have charges against him considered by a jury in the selection of which there has been neither inclusion nor exclusion because of race.'

"Under the contentions of the defendants, our inquiry must be directed to whether the Jury Commission discriminated against Negroes in the formation of the juries by imposing an arbitrary limitation upon the number of that race selected or drawn for jury service. This is a question of fact. The burden of establishing the discrimination rests upon the defendants.

"The record reflects that the trial judge had set aside a previous indictment of these defendants for the present offense based upon a finding of racial discrimination in the exclusion of Negroes from the jury lists. Thereafter, he gave written instructions to the Jury Commission in which he stated in part:

"'* * * The law is plain that jury commissioners cannot take into consideration the race of a prospective juror in passing upon his qualifications. That means, therefore, that you cannot effectively include a certain percentage of Negroes in the venire boxes any more than you can exclude any Negro because of his race.'

"Pursuant to these instructions the Jury Commission undertook to reconstitute the general venire and jury bodies. The testimony discloses 1000 names were drawn from the voting registration rolls according to a non-discriminatory formula of taking each twentieth or twenty-second name on the roll. From these the Jury Commission made eliminations because of disqualifications, thereby reducing the number to 835. In these eliminations the Commission made no discrimination because of race. The pool of 835 names included 124 Negroes. From this pool the Jury Commission drew indiscriminately 300 names for the general venire and 100 names for the tales jury box.

"From the 300 names in the general venire, the Jury Commission selected twenty for the list of grand jurors. This list included four Negroes. The twenty names were placed in an envelope. From them the trial judge selected a foreman for the grand jury. The remaining eleven members of the grand jury were drawn by lot. These included three Negroes. One of the Negroes claimed his statutory exemption as a school

teacher and was excused by the judge as provided by law. Two Negroes served on the grand jury which returned the present indictment against the defendants.

"After the selection of the grand jury list, the Jury Commission drew the petit jurors by lot from the general venire.

"It is clear from the record that no racial discrimination was practiced in the selection of the general venire or in the drawing of the petit jurors, who convicted the defendants. In this Court the defendants concentrate their attack on the selection of the grand jury list of twenty by the Jury Commission. In essence, the defendants contend that a fixed percentage of Negroes were selected for the grand jury list solely on the basis of race without regard to qualifications. This, it is reasoned, resulted in an arbitrary and unconstitutional limitation on the number of Negroes placed on the grand jury. With this contention we cannot agree.

"LSA–R.S. 15:172 establishes the qualifications for grand jurors:

" 'The qualifications to serve as a grand juror or a petit juror in any of the courts of this state shall be as follows:

" 'To be a citizen of this state, not less than twenty-one years of age, a bona fide resident of the parish in and for which the court is holden, for one year next preceding such service, able to read and write the English language, not under interdiction or charged with any offense, or conviction at any time of any felony, provided that there shall be no distinction made on account of race, color or previous condition of servitude; and provided further, that the district judge shall have discretion to decide upon the competency of jurors in particular cases where from physical infirmity or from rela-

tionship, or other causes, the person may be, in the opinion of the judge, incompetent to sit upon the trial of any particular case.

" 'In addition to the foregoing qualifications, jurors shall be persons of well known good character and standing in the community.'

"LSA–R.S. 15:180 provides a procedure for the creation of the list of grand jurors:

" 'Immediately after completing the general venire list, the commission *shall select* therefrom the names of twenty citizens, possessing the qualifications of grand jurors, to be taken from different portions of the parish, as far as practicable, who shall be subject to duty as grand jurors during the term of six months after the grand jury is impaneled and until a succeeding grand jury shall have been impaneled.

" 'The names of the persons so selected shall be written on slips of paper, by the clerk, in the presence of the commissioners and they shall place the slips in an envelope, seal the same and indorse thereon the words: "List of Grand Jurors." (Italics ours)'

"It is clear that the law requires the Jury Commission to *select* the list of grand jurors based upon an evaluation of qualifications with proper regard to geographical distribution.

"The official census of 1960 reflects that Iberia Parish had a population of 51,657, of which 14,781 were Negroes. The registered voters in the parish at the time of the trial numbered 21,023, of which 4,427 were Negroes. Of the jury pool of 835, drawn indiscriminately from the registration rolls, 124 were Negroes.

"It is true that the Clerk of Court, a member of the Jury Commission called as a witness by the defendants, testified that the Commission deemed 16% to 20% of the grand jury list to be a fair representation

of Negroes on the list. This percentage, he stated, was based roughly on the proportion of Negroes drawn for the initial pool of 835 from the registration rolls in a non-discriminatory manner. However, when his testimony is considered as a whole, it reflects that the percentage was not used as a limitation, but that the selection of the grand jury list was made on the basis of qualifications. He also testified:

"'A. And necessarily, in choosing the whites as well as the negroes, we tried to get a good cross-section of the men in the parish. Those that were better qualified to serve on the Grand Jury of those 300 that we had there. And I don't remember—I think we had two negroes from Jeanerette and one from Loreauville and I think, one from New Iberia.

"'Q. But you don't recall whether the negroes were chosen first or the whites were chosen?

"'A. No sir, they were chosen all together. I mean, all at one time.

\*   \*   \*   \*   \*   \*

"'Q. I was going to ask you that. That was going to be my next question.

"'Now, is it your understanding that as a member of the Jury Commission and as Clerk of Court of this Parish that the law requires the Jury Commission to select the Grand Jurors?

"'A. Yes sir.

"'Q. Does it require the Jury Commission to have these Grand Jurors from any particular section of the parish that you know of?

"'A. I don't know just what the law covers on that but we do try —we give a certain percentage to the different wards.

"'Q. In other words, in selecting the Grand Jury, do you try to see that each section of the parish is represented?

"'A. Yes sir.

\*   \*   \*   \*   \*   \*

"'Q. In other words, each name that is selected from your general venire for your Grand Jury, is that man's qualifications discussed by the Jury (Commission) as a whole?

"'A. Yes sir.

"'Q. Now, was anybody placed on that Grand Jury with the basis of his qualification and the sole and only basis of his qualifications strictly that he was white or colored?

"'Q. Strictly on his qualifications.

"'Q. Did his color have anything to do with his qualifications to serve as a Grand Juror?

"'A. No sir.

\*   \*   \*   \*   \*   \*

"'Q. Was there in any way an attempt or intent on the part of the Jury Commission to discriminate in favor for or against any race in selecting this Jury?

"'A. No sir.'

"The eminent trial judge, who saw and heard the witnesses on this factual issue, states in his per curiam:

"'The evidence shows very clearly that there was no discrimination in drawing and selecting petit and grand juries.'

"We conclude, as he did, that the defendants have failed to show racial discrimination in the selection of the list of grand jurors in the instant case. We do not understand the law to be that an indictment, which is an accusation only, must be set aside because members of a defendant's race have been intentionally included in the grand jury list. Such a rule would make it virtually impossible to legally impanel a grand jury under a system of selection which requires an investigation of

824

competency and a weighing of qualifications. Under such a system, knowledge of a prospective juror's race on the part of the Jury Commission is inevitable.

"As we stated in State v. Green, 221 La. 713, 60 So.2d 208:

" ' * * * It would be fallacious, we think, to hold that, because jury commissioners, being conscious of the necessity of giving consideration to members of the colored race, as well as those of other races, in the selection of all juries in order to comply with the guarantees of the Fourteenth Amendment to the Federal Constitution, have purposely included Negroes on a jury panel, their forthright action constitutes discrimination in the absence of a showing that there was a planned limitation upon the number of Negroes to be chosen.'

\* \* \* \* \* \*

"Bill of Exception No. 4 (Mack) and Bill of Exception No. 3 (Williams) were reserved to the admission of the confessions and the overruling of a motion for a new trial. It also reiterated the objections presented in the bills of exception previously disposed of, objected to the failure of the trial judge to order all the evidence taken and made part of the record on appeal, and asserted that the verdict was contrary to the law and the evidence.

"The defendants contend that the statements of the defendants were not voluntary and were inadmissible.

"To lay the foundation for admission of the confessions, the state offered the testimony of Chief of Police Andrew Viator and Captain Albert Darby, the officers to whom they were made. They testified that the statements were voluntary and that no coercion, intimidation, or promises were used in obtaining them. The defendants offered no evidence attacking the confessions.

"The ruling of the trial judge admitting the confessions in evidence is correct.

"The defendants also contend that the trial court committed prejudicial error in refusing to order all of the evidence taken and incorporated in the record without cost to the defendants. The evidence relating to each bill of exception was taken. They rely upon the decision of the Supreme Court of the United States in Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891, 55 A.L.R.2d 1055.

"This Court does not review the facts in a criminal case. The appeal is solely on questions of law. The evidence attached to the bills of exception in the instant case provides a full base for appellate review of the questions of law. Under these circumstances the trial court committed no error. The decision in Griffin v. Illinois, supra, is not controlling."

This Court completely agrees with the above quoted portions of the opinion of the Louisiana Supreme Court. Under Louisiana law the jury commissioners are required to *select* the members of the grand jury panel. From the panel of twenty names thus selected, the grand jury of twelve is ultimately drawn by lot. Such a system as is provided for by Louisiana law has never been held to be unconstitutional, nor do I see how it could be. Certainly it is necessary to have only qualified persons serve on a grand jury. After the panel was thus selected, according to state law, the record discloses no systematic inclusion or exclusion of members of the Negro race in the empanelling of the grand jury as ultimately drawn. As I have stated in a previous opinion, United States v. Davis, D.C., 229 F.Supp. 649, if such a system as was here used is held to be invalid, it would be, in my opinion, virtually impossible to select a jury in Louisiana which would be free from successful attack. This grand jury was selected and empanelled in utter good faith by

the jury commission and the Court of Iberia Parish, and completely in accordance with law. There were no Negroes' names systematically or purposely included in the grand jury as ultimately drawn by lot from the grand jury panel. There were, indeed, the names of qualified Negroes purposely and knowingly included on the grand jury panel, from which the grand jury would ultimately be drawn, but the grand jury itself was ultimately drawn by lot in a fair, impartial, non-discriminatory manner. Thus, this grand jury was, in every respect, constitutionally constituted.

The two remaining grounds of attack relied upon by petitioners in their quest for the writ of habeas corpus are sufficiently disposed of in the above quoted opinion of the Louisiana Supreme Court and should require no further comment. Petitioners suggest that their rights were violated because a complete transcript, including every word that was uttered during the state court trial, was not made available to them. However, such a contention is without merit. Petitioners were accorded all of their constitutional rights under the laws of Louisiana providing for the reserving of bills of exceptions, to be made the basis of appeal from a criminal conviction, and in this connection, they were accorded their right of having all of the pertinent and relevant testimony transcribed, preserved, and presented to the Supreme Court of Louisiana in connection with their bills of exception. There is no showing of any kind by these petitioners that they were not afforded as complete a transcript as was necessary for the purposes of appeal. They were not entitled to appeal on any grounds other than the grounds preserved by properly reserved bills of exception, and the transcript furnished them for appeal covered fully and completely all of the testimony in connection with or bearing in any way upon the bills of exception reserved.

Petitioners have finally alleged that confessions were used against them which were taken at a time when they were not represented by counsel. However, petitioners have failed completely to present any testimony or any evidence of any kind which would indicate to this Court that the confessions used against them were not freely and voluntarily given with a full and complete understanding of their import and the use to which they would be put. There is no evidence presented to this Court to indicate that petitioners were at any time denied the right of counsel or denied access to counsel, nor have they shown by evidence, affidavits, or otherwise, that the confessions which they gave, and which were used against them during their trial, were either obtained or used in any way in violation of their constitutional rights. Consequently, for these reasons, petitioners' application for the issuance of a writ of habeas corpus will be denied, and judgment will be entered accordingly.