## EUBANKS *v.* LOUISIANA.

No. 550.   Argued April 30–May 1, 1958.—Decided May 26, 1958.

*Herbert J. Garon* argued the cause for petitioner.   With him on the brief was *Leopold Stahl.*

*Michael E. Culligan,* Assistant Attorney General of Louisiana, argued the cause for respondent.   With him

on the brief were *Jack P. F. Gremillion*, Attorney General, and *Leon D. Hubert, Jr. William P. Schuler* filed an appearance for respondent.

MR. JUSTICE BLACK delivered the opinion of the Court.

In an unbroken line of cases stretching back almost 80 years this Court has held that a criminal defendant is denied the equal protection of the laws guaranteed by the Fourteenth Amendment if he is indicted by a grand jury or tried by a petit jury from which members of his race have been excluded because of their race.[1] Our only concern here is with the application of this established principle to the facts disclosed by the record now before us.

The petitioner, a young Negro, was indicted by an all-white grand jury in the Parish of Orleans, Louisiana, for murder of a white woman. He moved to quash the indictment on the ground that Negroes had been systematically excluded from grand juries in the parish, including the grand jury which returned the indictment against him. After a hearing, his motion was overruled, and he was tried, convicted and sentenced to death. The Louisiana Supreme Court affirmed, holding that the record disclosed no discriminatory exclusion of Negroes from his grand jury, 232 La. 289, 94 So. 2d 262. We granted certiorari, 355 U. S. 812.

The method by which grand juries are selected in the parish is not controverted. A jury commission is

---

[1] *Strauder* v. *West Virginia*, 100 U. S. 303; *Neal* v. *Delaware*, 103 U. S. 370; *Gibson* v. *Mississippi*, 162 U. S. 565; *Carter* v. *Texas*, 177 U. S. 442; *Rogers* v. *Alabama*, 192 U. S. 226; *Martin* v. *Texas*, 200 U. S. 316; *Norris* v. *Alabama*, 294 U. S. 587; *Hale* v. *Kentucky*, 303 U. S. 613; *Pierre* v. *Louisiana*, 306 U. S. 354; *Smith* v. *Texas*, 311 U. S. 128; *Hill* v. *Texas*, 316 U. S. 400; *Akins* v. *Texas*, 325 U. S. 398; *Patton* v. *Mississippi*, 332 U. S. 463; *Cassell* v. *Texas*, 339 U. S. 282; *Hernandez* v. *Texas*, 347 U. S. 475; *Reece* v. *Georgia*, 350 U. S. 85.

required to select, "impartially, from the citizens of the Parish of Orleans having the qualifications requisite to register as voters, the names of not less than seven hundred and fifty persons competent . . . to serve as jurors."[2]   Twice each year the Commissioners draw the names of 75 persons from this group.   The list of 75 is then submitted to one of the six judges of the local criminal court who, in rotation, choose a new grand jury of 12 every six months.[3]   Obviously the judges have broad discretion in selecting from the list provided by the Commission.   *State* v. *Dorsey*, 207 La. 928, 22 So. 2d 273. Several of them interview a substantial number of prospective jurors before making their choice.   Others, including the judge who chose the jury that indicted petitioner, testified that they usually selected on the basis of personal knowledge or reputation in the community.   Petitioner does not challenge this system of choosing grand jurors, as such, but he does contend that it has been administered by the local judges so that members of the Negro race have been systematically excluded from grand jury service.

Although Negroes comprise about one-third of the population of the parish, the uncontradicted testimony of various witnesses established that only one Negro had been picked for grand jury duty within memory.   And this lone exception apparently resulted from the mistaken impression that the juror was white.   From 1936, when the Commission first began to include Negroes in the pool of potential jurors, until 1954, when petitioner was indicted, 36 grand juries were selected in the parish. Six or more Negroes were included in each list submitted to the local judges.   Yet out of the 432 jurors selected only the single Negro was chosen.   Undisputed testi-

---

[2] La. Rev. Stat., 1950, Tit. 15, § 194.

[3] *Id.*, § 196.

mony also proved that a substantial number of the large Negro population in the parish were educated, registered to vote and possessed the qualifications required for jury service, all of which is emphasized by the fact that since 1936 the Commission has regularly selected Negroes for the grand jury panel. Indeed, Negroes have served on the federal grand jury in the parish for many years.

In *Patton* v. *Mississippi,* 332 U. S. 463, 469, this Court declared, in a unanimous opinion, that "When a jury selection plan, whatever it is, operates in such way as always to result in the complete and long-continued exclusion of any representative at all from a large group of Negroes, or any other racial group, indictments and verdicts returned against them by juries thus selected cannot stand." This is essentially the situation here. True, the judges now serving on the local court testified generally that they had not discriminated against Negroes in choosing grand juries, and had only tried to pick the best available jurors. But as Chief Justice Hughes said for the Court in *Norris* v. *Alabama,* 294 U. S. 587, 598, "If, in the presence of such testimony as defendant adduced, the mere general assertions by officials of their performance of duty were to be accepted as an adequate justification for the complete exclusion of negroes from jury service, the [Equal Protection Clause]—adopted with special reference to their protection—would be but a vain and illusory requirement." Compare *Reece* v. *Georgia,* 350 U. S. 85, 88; *Hernandez* v. *Texas,* 347 U. S. 475, 481. This is particularly true here where several of the parish judges apparently have never even interviewed a Negro in selecting grand jurors. We are reluctantly forced to conclude that the uniform and long-continued exclusion of Negroes from grand juries shown by this record cannot be attributed to chance, to accident, or to the fact that no sufficiently qualified Negroes have ever been included in the lists submitted to the various local judges. It seems

clear to us that Negroes have been consistently barred from jury service because of their race.

It may well be, as one of the parish judges recently stated, that "the selection of grand juries in this community throughout the years has been controlled by a tradition and the general thinking of the community as a whole is under the influence of that tradition." [4] But local tradition cannot justify failure to comply with the constitutional mandate requiring equal protection of the laws.

---

[4] *Louisiana* v. *Dowels*, Crim. Dist. Ct., No. 139–324, Oct. 1952 (unreported opinion). In that case the trial judge quashed an indictment because Negroes had been systematically and intentionally excluded from parish grand juries:

"Our situation in Orleans seems to be particularly vulnerable to the theory of the United States Supreme Court 'that chance and accident alone can hardly explain the continuous omission of negroes from grand juries over a long period of time' because we have five and in the last four years, six courts, selecting grand juries and the record shows that notwithstanding the number of courts that select grand juries, and regardless of which court selects a grand jury, or when that court selects a grand jury, or how that court selects a grand jury, or how often one court or all courts have selected a grand jury, or over what period of time any court or all courts continue to select grand juries, the omission of negroes is consistent, constant and the same.

. . . . .

"While this court is conscious of its fallibility, it is firm in its opinion that this record in the Supreme Court of Louisiana or of the United States, would support no other ruling except a ruling quashing the indictment herein because of intentional and systematic exclusion of negroes from grand juries in Orleans Parish because of race and color and in violation of the Fourteenth Amendment, inclusive of the grand jury that returned the indictment in this case, because that grand jury is not differentiated from the pattern of jury selection that consistently eliminated colored persons from grand juries."

So far as appears this is the only instance in the parish where an indictment has been annulled because of racial discrimination.

"A prisoner whose conviction is reversed by this Court need not go free if he is in fact guilty, for [the State] may indict and try him again by the procedure which conforms to constitutional requirements.[5]  But no State is at liberty to impose upon one charged with crime a discrimination in its trial procedure which the Constitution, and an Act of Congress passed pursuant to the Constitution, alike forbid.  Nor is this Court at liberty to grant or withhold the benefits of equal protection, which the Constitution commands for all, merely as we may deem the defendant innocent or guilty."  *Hill* v. *Texas,* 316 U. S. 400, 406.

The judgment of the Louisiana Supreme Court is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.

*It is so ordered.*

---

[5] For example in *Pierre* v. *Louisiana,* 306 U. S. 354, a Negro's conviction was reversed because members of his race had been discriminatorily excluded from the grand jury which indicted him. On remand another grand jury, this time composed in part of Negroes, was impaneled and returned a new indictment.  The defendant was then tried and convicted by a petit jury which included a Negro. See *State* v. *Pierre,* 198 La. 619, 3 So. 2d 895.