**Herman Edward HARRIS, Petitioner,**

v.

**STATE OF NORTH CAROLINA,**
**Respondent.**

**Civ. No. 1561.**

United States District Court
E. D. North Carolina,
Raleigh Division.

April 28, 1965.

Reginald L. Frazier, New Bern, N. C.,
J. LeVonne Chambers, Charlotte, N. C.,
for petitioner.

Thomas Wade Bruton, Atty. Gen. of North Carolina, by Theodore C. Brown, Jr., Staff Atty., for respondent.

LARKINS, District Judge.

## SUMMARY

This cause comes before the Court upon a second petition for a writ of habeas corpus filed in forma pauperis by a State prisoner, pursuant to Title 28 U.S.C.A. § 2254. The first petition was denied on February 28, 1964 because petitioner had failed to exhaust his State remedies. The present petition is resisted by respondent who has made answer and moved to dismiss.

The petitioner, who is a negro, contends that he is illegally restrained of his liberty in that he was denied due process of law at and before his trial, all in violation of the Fourteenth Amendment to the Federal Constitution. His petition sets forth the following eight allegations which were before the Court at New Bern, North Carolina, December 10, 1964, when petitioner was given a plenary hearing:

1. All persons of the African race were excluded from the grand jury that found the indictment on the basis of their race.

2. The petitioner was denied the right to introduce witnesses to sustain and prove his allegations to this all-white jury which found the indictment.

3. Sentence was pronounced during the voluntary absence of the accused, thereby invalidating the verdict.

4. The trial jury was not proper and impartial.

5. The accused did not have compulsory process in order to obtain witnesses in his favor.

6. The petitioner was confined in jail for an unreasonable length of time before trial, during which confinement he received cruel and unusual punishment which jeopardized his life.

7. Items alleged to have been stolen by defendant at the trial were not put in evidence.

8. Four cartons of cigarettes were found in an uninhabited building some five miles from the petitioner's residence.

Upon completion of the hearing on December 10, 1964, the Court continued further hearings in the matter pending its receipt of interrogatories, counteraffidavits, or depositions in respect to the affidavit of one Mark Landis. These were submitted by February 1, 1965 and petitioner, through counsel, was to make reply by March 1, 1965, if he so desired.

The State of North Carolina has submitted interrogatories to the said Mark Landis, a copy of these having been filed with the Court on January 11, 1965, and Mark Landis has answered them.

The Court has withheld making any determination in respect to the admission in evidence of the affidavit of Mark Landis until the afore-mentioned interrogatories, counteraffidavits, or depositions were before the Court.

Therefore, before the Court are the eight questions set out in the petition for writ of habeas corpus, as well as the question of the admissibility of the affidavit of Mark Landis.

## FINDINGS OF FACT

Petitioner was convicted during the March 1962 Term of the Superior Court of Mecklenburg County on six (6) counts of breaking and entering and six (6) counts of larceny of personal property of a value less than $200. Some of these counts were felony counts and some were misdemeanor counts. The judgment of the Superior Court indicates which were misdemeanors and which were felonies, and the sentences are not in dispute in that respect.

The court sentenced petitioner to a term of incarceration on all twelve counts, each to commence upon the expiration of the prior sentence. Petitioner had entered a plea of not guilty to all twelve counts and was found guilty by a jury to each count. The total term of incarceration extends from a minimum period of nineteen years and two months to a maximum period of thirty (30)

years. The total possible sentences under the offenses charged are eighty-eight (88) years.

Petitioner was represented by a court-appointed attorney who was appointed on the day of trial. He had an opportunity to confer with the petitioner prior to the trial, and did so. He did not subpoena any of the witnesses which petitioner now contends he requested. He also made no attempt to obtain a continuance or seek any other form of delay in order to investigate the case further.

Petitioner did not have counsel at any prior hearing, but no direct prejudice appears to have resulted from the lack of same, none having been alleged or indicated.

The grand jury of Mecklenburg County which returned the true bill of indictment upon which petitioner was convicted was composed of eighteen (18) members, all of whom were members of the white race. The petit jury which returned the verdict of guilty was composed of twelve (12) members, all of whom were of the white race. There is no evidence as to the racial composition of the jury panels from which both the grand jury and petit jury were selected. The reason being that the list bears no indication as to the race of the members.

The list from which such grand jury panel was chosen was composed of members of both races, although the percentage of negroes to whites on the list was not equivalent to that of the overall racial composition of the county, a lesser percentage of negroes being on the grand jury list than that of the racial composition of Mecklenburg County.

The county has a racial composition of about 76% white to 24% non-white. The jury list ratio approximates 7.3% selected as non-white according to a judgment of the Superior Court of Mecklenburg County. (State v. Hawkins, Cases No. 42–237, 42–238, Aug. 14, 1964).

The eighteen members of the grand jury were drawn from the 120-member panel by a ten year old child. All 120 names (these names were in turn selected from the 90,000 member jury list by the County Commissioners), were placed in a hat from which the child took the names. This drawing was conducted in open court before the judge of the Superior Court.

The over-all jury list of approximately 90,000 names was selected by including all those names remaining from the old list of 1957. The next source was the tax list and tax scrolls. *All* names not already on the list were then included. The tax list and the tax scrolls both indicate the race of the person listed. The next source of names was the voters' register. This list also indicates the race of the person listed. The last source of names was the telephone directory and the race of the person listed is not directly indicated there although one familiar with the addresses might be able to speculate as to the race of some of those listed. The purpose in revising the list was to enlarge it and make it as extensive as possible. There is no evidence that there were any exclusions at this time for any reason whatsoever. Race was not a factor in the making up of the over-all jurors list of some 90,000 names.

There have been negroes on other grand juries, both prior to and subsequent to the selection of this particular grand jury. This is also true in respect to petit juries.

It is to be noted that no exclusions were made for any reason at the time the 120 names were drawn for the jury panel from the over-all jury list. It is a fact that any member of the County Board of Commissioners was eligible to purge the list and anyone from the jury list on their own volition. There is no evidence that any member actually did so however.

Certain names were excluded from the jury panel by reason of having committed certain criminal offenses such as felonies (assault with intent to kill is an example testified to), and being a habitual drunkard. The method of deter-

mining those names to be excluded is as follows:

A city of Charlotte, Mecklenburg County, police officer, J. A. Nichols, was given the list of the jury panel. Prior to the sheriff's office summoning all those named on the list, Officer Nichols checked this list against the criminal-record files and circled those names with records of such crimes as indicated above. He then telephoned the sheriff's office and told them the names of those he had so circled. Officer Nichols then testified that he did not know whether the circled jurors were summoned or not, but it is reasonable to assume that those jurors circled were not summoned. Officer Nichols also testified that he gave no consideration as to the race of the prospective jurors. There is no evidence as to whether or not the race of the prospective juror is indicated on the criminal records checked by Officer Nichols.

It is also the procedure of the sheriff's office to make a like check of their criminal records and circle names in a manner similar to that used by Officer Nichols.

There may be as many as ten or twelve names circled in each panel drawn by the commissioners due to the criminal records involved. The panel for both grand jurors and petit jurors is drawn in an identical manner. All those on the panel who are passed (not circled) are summoned by the mailing of cards to their last known address.

The respondent admits that petitioner was not permitted to introduce witnesses or prove his case to the grand jury which found the true bill of indictment. His attorneys, for the purpose of this petition, have agreed that the Court should take judicial notice of the fact that this is not permissible procedure before the grand juries of North Carolina.

Petitioner's attorney, by way of his deposition, indicates that he passed on the petit jury and found nothing lacking. He also deposes to the fact that petitioner was present when the court passed sentence upon petitioner. This latter testimony is supported by the deposition of the Clerk of the Court who was present, and by petitioner's own testimony at his habeas corpus hearing.

Petitioner's attorney further testified that he had time to prepare the petitioner's case for trial, although he did not subpoena any witnesses. It is the further testimony of the attorney that he has never had difficulty in obtaining the cooperation of the sheriff in summoning witnesses if he felt they were necessary.

There is no evidence to support the allegations of cruel or unusual punishment while confined between the time of arrest and time of trial. This contention does not appear to be seriously contested by petitioner at his hearing, or by his attorneys.

The depositions of petitioner's attorney and that of the Clerk again indicate that petitioner's seventh contention of failure to introduce evidence of items stolen is without merit, and it is not seriously asserted by his counsel.

As to the eighth contention, counsel agree that this relates to matters of evidence to be ruled upon by the trial court and is not properly before this Court. There is no federal question involved in relation to the cartons of cigarettes.

The affidavit of Mark Landis was obtained during the months of July and August 1964, and in relation to another matter rather than being directed to the questions raised by petitioner. It is to be further noted that he did not interview or substantiate the information he obtained from those persons he interviewed.

The respondent has had the opportunity to submit interrogatories to him, which he has fully and competently answered.

### CONCLUSIONS OF LAW

Although the affidavit of Mark Landis was obtained in relation to another matter, the information contained therein is pertinent. When it is recalled that the nature of the proceeding of a petition for writ of habeas corpus is peculiar, and for which there is no parallel, the District Courts are willing

to do all things reasonable in order to ascertain the merits, and the Court will admit the affidavit into evidence.

This is reaffirmed by the fact that respondent has had the opportunity to cross-examine the affiant by means of interrogatories, counter-affidavit or deposition. Respondent chose the method of interrogatories as the method best able to serve its purpose. Affiant has answered them. There appears, therefore, no substantial reason for refusing the admission of the affidavit. No prejudice would result from the admission of it to either party.

The contention of petitioner which is most vigorously asserted by his counsel, and the one with the greatest possibility of showing substantial merit, is that relating to the systematic exclusion of negroes from the grand juries and petit juries of Mecklenburg County. Petitioner has enumerated these contentions as the first and fourth.

■ The law is clear and there is no contention to the contrary that a systematic exclusion of negroes is a denial of due process of law as required by the Fourteenth Amendment to the Constitution of the United States. See Eubanks v. State of Louisiana, 356 U.S. 584, 78 S.Ct. 970, 2 L.Ed.2d 991 (1958); and Norris v. State of Alabama, 294 U.S. 587, 55 S.Ct. 579, 79 L.Ed. 1074 (1935).

■ Where negroes are systematically excluded from both the grand jury which indicted a colored petitioner, and from the petit jury which convicted him, the judgment is unconstitutional and void. United States ex rel. Goldsby v. Harpole, 263 F.2d 71 (5th Cir., 1959); and Arnold v. North Carolina, 376 U.S. 773, 84 S.Ct. 1032, 12 L.Ed.2d 77 (1964).

■ But the Federal Constitution does not guarantee to a criminal defendant in a state court a hearing before a grand jury, or trial before a petit jury in which his race is proportionately represented. United States ex el. Goldsby v. Harpole, 263 F.2d 71, supra; Bailey v. Henslee, 287 F.2d 936 (8th Cir., 1961); and Maxwell v. Stephens, 229 F.Supp. 205 (E.D.Ark.1964). Or that there will be a proportionate representation of races upon a jury venire. United States ex rel. Seals v. Wiman, 304 F.2d 53 (5th Cir., 1962).

■ What is required of the petitioner in order to sustain the burden he has undertaken is that he must show the jury was not indiscriminately drawn from among those persons eligible to serve in the county. He must show an arbitrary or systematic exclusion of persons from the list, panel, or jury on the basis of race. If the manner of selecting the jury is fair and reasonable, although not resulting in a jury suitable to petitioner's specific needs, then he has no complaint. Wolfe v. Nash, 313 F.2d 393 (8th Cir., 1963); and Hoyt v. State of Florida, 368 U.S. 57, 69, 82 S.Ct. 159, 7 L.Ed.2d 118 (1961).

■ The burden of establishing discrimination in the selection of jurors is on the petitioner (Bailey v. Henslee, 287 F.2d 936, supra), and the mere fact that there is a disproportionate ratio on the jury, independent of any other evidence, is of little significance. Hoyt v. State of Florida, 368 U.S. 57, 82 S.Ct. 159, supra. Of course, evidence that none, or very few negroes have served covering a span of an extended period of time will establish a prima facie case. United States ex rel., Goldsby v. Harpole, 263 F.2d 71, supra; United States ex rel. Seals v. Wiman, 304 F.2d 53, supra; Eubanks v. State of Louisiana, 356 U.S. 584, 78 S.Ct. 970, supra; and Arnold v. North Carolina, 376 U.S. 773, 84 S.Ct. 1032, supra.

■ The petitioner has failed to show that the method of selection of jurors to be placed on the list was such a method as to amount to an intentional exclusion, unreasonable exclusion, or a prejudicial and systematic exclusion of negroes. See United States ex rel. Davis v. Davis, 229 F.Supp. 649 (E.D.La.1964).

The facts show four possible occasions which could have provided an opportunity to exclude negroes:

(1) In making the original jury list of 1960, it was made from the list of 1957. There is no evidence as to how the list of 1957 was composed, and race may have been a factor at that time. Of course, this is mere speculation and the effect it would have had on the list of 1960 would be negligible when it is realized that four additional sources were used to further compose the 1960 list. Although three of these four sources did indicate the race of the name being added (those indicating race were the tax list, tax scrolls and voters' register), *all* names not previously used from the 1957 list were added. Obviously no systematic exclusion can result from the use of all the names available. The additional factors used in modifying the 1960 list would remove this case from that found in United States ex rel. Seals v. Wiman, 304 F.2d 53, supra.

(2) The ability of any County Commissioner to purge the list could have been used as a method of excluding names on the basis of race. But there has been no evidence of any commissioner actually purging the list for the reason of systematically excluding those of the negro race, or for any other reason.

When it is also realized that the list contained some 90,000 individual slips of paper, and that there was no indication of race on these slips of paper, it can be seen that to ask the Court to find this was the method used to prejudicially and systematically exclude negroes from the jury, is to ask the Court to speculate on matters about which there is no evidence and which do not appear reasonable.

(3) and (4) Possibilities three and four are joined together for discussion. These revolve upon the possibility that the City Police Officer, J. A. Nichols, and his counterpart in the sheriff's office, while circling the names of those jurors who would not be qualified as jurors due to past criminal records, could have also arbitrarily and unreasonably eliminated negroes. This conclusion must be based on the assumption that these two men had knowledge of the race of all the prospective jurors. There was no evidence of this knowledge, although it may have been indicated on the criminal records checked.

■ If, therefore, the race of some of the jurors was before them, this would not negative the need for some form of selecting only those jurors qualified. And there is no evidence that these men considered the race of jurors, if they were able to determine it. United States ex rel. Davis v. Davis, 229 F.Supp. 649, supra; and United States ex rel. Mack v. Walker, 231 F.Supp. 819 (E.D.La. 1964).

To therefore ask the Court to hold that these four possibilities resulted in the systematic exclusion of negroes would be asking the Court to venture into, and wander in the realm of speculation and abandon the test of probability. This the Court will not do.

■ The factual situation does not present a prima facie case of systematic exclusion of negroes. None of the statistics before this Court approach those of a case in which a prima facie case was found. The closest statistical comparison is seen in United States ex rel. Seals v. Wiman, 304 F.2d 53, supra. In the Wiman case, 31.7 percent of the possible jurors were non-white while only two percent actually served. This is a differential of some 29.7 percent. In the case at hand 24 percent of the possible jurors were non-white and 7.3 percent served. This is a 16.7 percent differential or one-half the differential found in the Wiman case. In Wiman, there were also other factors not present here which clearly contributed to the systematic exclusion.

Other than the Wiman case, the factual situation of the case at hand in no way approaches those in which prima facie exclusion was found. See United States

ex rel. Goldsby v. Harpole, 263 F.2d 71, supra; Eubanks v. State of Louisiana, 356 U.S. 584, 78 S.Ct. 970, supra; and Arnold v. North Carolina, 376 U.S. 773, 84 S.Ct. 1032, supra.

■ In relation to contention number two of the petition, the Court takes judicial notice of the fact that an accused cannot present witnesses in his behalf to a grand jury.

As to contention number three, petitioner testified at his hearing, as did his attorney and the Clerk of the Superior Court in their depositions, that petitioner was in fact present for sentencing.

Contention number four is disposed of in the discussion of contention number one, both going to the question of prejudice and race.

■ Contention number five fails upon the testimony of petitioner's own counsel who stated that he has had no difficulty in obtaining the use of process in obtaining desired witnesses.

■ As to contention number six, there has not been presented any evidence to support any possible cruel and unusual punishment, while there has been substantial testimony in the form of depositions which indicate the contrary.

In contention number seven, the depositions of petitioner's attorney and clerk of court indicate this contention to be without merit.

While contention number eight is a matter not within the jurisdiction of the Court, it pertains to matters of evidence.

### ORDER

Therefore, it is ordered that the petition for writ of habeas corpus be, and the same is hereby denied.

It is further ordered that respondent's motion to dismiss be, and the same is hereby allowed.