195 So.2d 800

Johnny **COLEMAN**

**v.**

**STATE of Alabama.**

**2 Div. 487.**

Supreme Court of Alabama.

Feb. 9, 1967.

Rehearing Denied March 9, 1967.

Orzell Billingsley, Jr., Birmingham, Michael Meltsner and Jack Greenberg, New York City, for appellant.

**510**

Richmond M. Flowers, Atty. Gen., and Leslie Hall, Asst. Atty. Gen., for the State.

SIMPSON, Justice.

The appellant was indicted, tried and convicted of murder in Greene County in 1962. From the original conviction the case was appealed to this Court under the automatic appeal statute, Title 15, § 382(1), et seq., Code, 1940. The judgment of the trial court was affirmed by this Court on May 9, 1963, 276 Ala. 513, 164 So.2d 704. On certiorari to the Supreme Court of the United States the judgment of this Court was reversed and the cause remanded. 377 U.S. 129, 84 S.Ct. 1152, 12 L.Ed.2d 190 (May 4, 1964).

The single issue on which the Supreme Court of the United States reversed was the trial court's refusal to permit proof of systematic exclusion of Negroes from the jury roll in Greene County on a motion for a new trial made by the defendant. No offer to prove this assertion was made at any time until after the conviction and the point was raised for the first time on motion for new trial. In accordance with the opinion of the Supreme Court of the United States the cause was remanded to the Circuit Court of Greene County for a hearing on the point raised in the motion for new trial. The Circuit Court held a hearing on the express question of whether Negroes are or have been systematically excluded from the jury roll of Greene County in violation of the mandate of the Constitution of the United States. The court after hearing denied the motion for new trial, specifically finding that there had been no exclusion, systematic or otherwise of Negroes from the jury roll in Greene County. This appeal followed.

■ In the hearing on the motion for new trial it was stipulated that the transcript of the trial in Colemen et al. v. Barton et al. (United States District Court for the Northern District of Alabama) would constitute a part of the record before the Circuit Court on the motion for new trial. That transcript makes up a large part of the record before us. The issue here is precisely the same as the issue before the trial court on the motion, i. e. the systematic exclusion, vel non, of Negroes from the jury roll in Greene County. The United States District Court in that case entered a decree to the effect that the Jury Commission of Greene County is under a statutory duty to place on the jury roll all persons possessing the qualifications to serve as jurors without regard to race and that the Commission was not to pursue a course of conduct which would operate to discriminate in the selection of jurors. It is not questioned that the Fourteenth Amendment to the Constitution of the United States forbids any discrimination against a race in the selection of grand juries, petit juries or the jury venire. Cassel v. State of Texas, 339 U.S. 282, 70 S.Ct. 629, 94 L.Ed. 839; Eubanks v. State of Louisiana, 356 U.S. 584, 78 S.Ct. 970, 2 L.Ed.2d 991; Arnold et al. v. North Carolina, 376 U.S.

773, 84 S.Ct. 1032, 12 L.Ed.2d 77 and many other cases.

The question is whether discrimination exists in the selection of jurors in Greene County, Alabama. To support his contention that Negroes are systematically excluded from the jury roll in Greene County the appellant offered a copy of the census figures from Greene County compiled by the Bureau of Census in 1960. The figures set forth the total population of the county at that time, of which some 11,500 were Negro and some 2,500 were white. There are approximately 2,200 Negro males over 21 and some 775 white males. The jury roll is made by the Jury Commission, the members of which are appointed by the Governor. The testimony of these commissioners and others indicates that the jury roll (and by this was meant the entire list of qualified jurors as compiled by the Commission) generally contained over 350 names (in 1961 it contained 353, of whom 16 were known to be Negro; in 1962 it contained 374, of whom 62 were known to be Negro; in 1963, 377, of whom 28 were known to be Negro). It should be noted that there is no evidence that the records kept by the Commission indicate the race of a qualified person enrolled so that it is not certain from the record that those identified as Negro from the roll constitute all the Negroes which might be included in the roll. There is testimony to the effect that generally in Greene County a Grand Jury venire is called twice a year and it involves approximately 50 to 60 persons, of whom 18 are selected by lot to sit as the Grand Jury. The evidence is that over the past ten years or so each venire of 50 to 60 persons has included several Negroes, generally 8 to 10 but the number is not constant. Petit jury venires generally number 50 to 60 persons and there was testimony to the effect that this 50 to 60 generally includes 6, 7 to 10 members of the Negro race.

■ The appellant insists that the very figures themselves suggest a systematic ex-

clusion of Negroes from the jury rolls. However, there are other considerations. It is admitted that the mere fact of inequality in the number selected does not itself show discrimination. Akins v. State of Texas, 325 U.S. 398, 65 S.Ct. 1276, 89 L.Ed. 1692 and other cases. And further, that a proportional selection of members of each race is not necessarily the criterion. The evidence in this case is that the members of the jury commission contacted Negro leaders in the community for names of eligible Negroes for jury service. These included ministers, school teachers, and other leaders. There was no charge there was intentional discrimination. The U. S. District Court found that approximately 10% of the jury roll was comprised of members of the Negro race. It was admitted by the U. S. District Court that not all members of the Negro race were qualified under the statute to serve as jurors. Persons having been convicted of felonies are not eligible. There was evidence to the effect that of all felony convictions in Greene County over the past 10 years, 95% or more had been Negroes. This would certainly tend to render ineligible a greater number of Negroes than white people, but of course, this would be true in any community where the population is preponderantly one race over the other. That is to say that it does not indicate that Negro people are more prone to commit felonies than white people, but simply that the greatest number of crimes are committed by the race making up the greatest part of the population.

■ On the precise issue involved here and particularly with reference to appellant's indictment and trial the evidence is that the venire from which the Grand Jury was drawn included members of the Negro race—at least four. That the venire from which the petit jury was struck included members of the Negro race. That this was not unusual and that for the past several years the proportions have been about the same. We do not find that appellant has discharged his burden of showing a systematic exclusion of members of his race and

that the evidence supports the finding made by the trial court. While the bare figures would tend to indicate a disparity and in fact do indicate a disparity, that disparity can be explained by a number of other factors. For example, it was shown that many of the Negroes who would otherwise be eligible are moving away from the county because of the lack of economic opportunity existing in Greene County for them and for other young people. The members of the white and Negro races who would be a benefit to the community and whose loss is felt in the county leave and hence leave the community poorer for their loss. It is further shown that many of the Negro people remaining in the county are not qualified under the statute for jury duty. It was not shown that there was any discrimination against Negroes in selection for jury duty as proscribed by our federal decisions. We believe the evidence indicates that every effort required has been made to select impartially from both races those who are qualified for this service and the trial court ruled correctly on the point considered

It is noted that the record incorrectly describes the judgment as "decree" and also that the judgment is somewhat incomplete in that it does not recite that the defendant was asked if he had anything to say whether or not the judgment of the court should be pronounced upon him and given an opportunity to make a response thereto. This is probably a technicality since he had already been adjudged guilty and sentenced to electrocution in the first judgment, from which the appellant appealed and which the Supreme Court of the United States reversed. Nevertheless, to make more certain that which is already certain, the court is affirming the judgment but remanding the cause to the lower court for proper sentence.

Affirmed; remanded for proper sentence.

All the Justices concur except GOODWYN, J., not sitting.