**William Ray WOODS, Petitioner,**

v.

**Dr. George J. BETO, Director, Texas Department of Corrections, Respondent.**

**Civ. A. No. 5–1081.**

United States District Court,
N. D. Texas,
Lubbock Division.

Oct. 5, 1972.

Thomas J. Griffith, Griffith, Brister & Benson, Lubbock, Tex., for petitioner.

Crawford C. Martin, Atty. Gen. of Texas, Lonnie F. Zwiener, Asst. Atty. Gen. of Texas, Austin, Tex., for respondent.

## MEMORANDUM AND ORDER

WOODWARD, District Judge.

William Ray Woods, the petitioner in this action, is in state custody pursuant to a judgment and sentence of the 106th District Court of Garza County, Texas, Cause No. 718, styled State of Texas versus William Ray Woods. At a jury trial he was convicted on the 20th day of December, 1951, of the felony offense of murder with malice and the judge of that court sentenced the petitioner in accordance with the verdict to 50 years in the penitentiary.

This application for a writ of habeas corpus was filed on behalf of petitioner under Title 28 U.S.C. § 2241 et seq.

In this application petitioner asks for habeas corpus relief, and in support thereof asserts that his conviction is constitutionally void and should be set aside on the following grounds:

A. That petitioner was afforded ineffective assistance of counsel at his trial thereby denying his rights under the Fifth Amendment of the United States Constitution.

B. That he has been effectively denied his right to appeal his conviction and have counsel on appeal, a denial of Fifth Amendment rights.

C. That those of the Negro race, of which petitioner is a member, were systematically and deliberately excluded from service on the grand jury and petit juries in Garza County, Texas prior to and at the time of his conviction, as were all Spanish surnamed persons, denying his rights under the Fourteenth Amendment of the Constitution of the United States.

The petitioner had previously asked this Court for habeas corpus relief and by order dated January 18, 1971 in Cause No. CA–5–753, 324 F.Supp. 982, the Court denied this relief. This order is here referred to as it will be pertinent to the discussion set forth below. In accordance with this order petitioner again applied to the convicting state court for relief and an evidentiary hear-

ing was held by the state court on May 19, 1971, the petition was denied on June 30, 1971, with supporting findings of fact and conclusions of law, and the Court of Criminal Appeals of the State of Texas in Ex parte Woods, 483 S.W.2d 464, on July 26, 1972 further denied petitioner's right to relief. The application now under consideration was then filed on behalf of petitioner in this court.

The petitioner has presented the above three grounds to proper courts in the State of Texas and he has exhausted his state remedies and this court has jurisdiction over this petition.

This Court has again reviewed all of the matters presented to it in connection with his application under Cause No. 5–753, has reviewed the record of the evidentiary hearing in the state court, and all of the pleadings and other matters filed in support thereof and in opposition thereto.

With respect to Ground No. 1 above, ineffective assistance of counsel, this Court has exhaustively reconsidered this question on which relief was denied by this Court's order on January 18, 1971. A review of all of the submissions and evidence submitted to the state court and to this Court leads this Court to the conclusion that defendant's counsel gave very effective representation to the defendant in every regard save one: although he indicated to petitioner that he had the right to appeal, counsel did not inform him he had the right to counsel on appeal, including appointed counsel if he could not afford one.

█ Although this Court originally held that there was no deprivation of the petitioner's right to appeal his conviction in 1951, and also held that counsel was effective at the trial, subsequent evidence which has been presented to the state court at the evidentiary hearing and which is now available to this Court, causes this Court to withdraw its findings and conclusions in this respect. The Court is of the opinion that the petitioner has effectively been deprived of his right of appeal and assistance of counsel on appeal, and that he has not waived such right, and that failure of his counsel to fully inform him of all his rights on appeal constitutes ineffective assistance of counsel. Thomas v. Beto, 423 F.2d 642 (5th Cir. 1970).

Judge Louis B. Read, the presiding judge at the trial which resulted in the conviction of the petitioner, and now retired, testified at the evidentiary hearing on petitioner's application to the state court. The judge stated unequivocally that he did not advise the petitioner that he had the right to appeal. [Tr. 114–115] Further, appointed counsel, the Honorable Pat Walker of Post, Texas, testified at the evidentiary hearing that although he discussed grounds for a motion for new trial, he in effect informed the petitioner that he did not have the financial resources to continue the appeal [Tr. 89], which would be tantamount to informing petitioner that he, as counsel, could not represent him further.

The evidence also indicates that petitioner's attorney had him sign a motion for new trial, but that he did not understand his right to appeal or his right to have an attorney upon appeal [Tr. 26]. Finally, that motion for new trial was before the court but the petitioner was confused as to the court's ruling on that motion [Tr. 31].

█ To show a denial of appeal or counsel on appeal it must be shown that a) the court knew the criminal defendant was indigent and b) the court knew that the defendant wished to appeal. Beto v. Martin, 396 F.2d 432 (5th Cir. 1968).

Petitioner meets both of the prerequisites set forth in Martin (supra). The court obviously knew that petitioner was indigent because that court had appointed counsel to represent him at the trial. Even though petitioner did not announce a desire to appeal in open court, the court must have had adequate cognizance of petitioner's desire to appeal through the motion for new trial and the colloquy that took place at the time of sentencing.

■ It cannot be said that petitioner waived his right to appeal or have counsel on appeal. Petitioner is a product of only an elementary education, without any previous experience in criminal or court matters, and although some might be deemed to have known that a motion for new trial was a part of the appellate process and knowledge of the right to appeal could have been imputed to them, this Court does not find that such knowledge could be imputed to the petitioner in this case. There is no testimony that he was ever directly informed of the right to appeal, there is no evidence that he was informed that on appeal he would have the right to an attorney and if he was indigent that the court would appoint an attorney to represent him. Although circumstances and evidence before this Court at the original hearing in this matter in Cause No. 5–753, led the Court to the conclusion that all of the matters and knowledge, including those concerning the motion for new trial, were sufficient to inform petitioner of his right to appeal, the new evidence now brought before the Court as to the testimony of the presiding judge and the additional testimony by his appointed counsel that he could not represent the petitioner establish (1) that the petitioner did not know that he had the right to appeal (2) that he did not know that he had a right to counsel (3) that he did not know that if he could not afford counsel on his own that one would be appointed to represent him; and without knowledge of these facts it cannot be said that he intelligently waived his right of appeal. The right to equal access to the appellate process being one guaranteed by the United States Constitution, Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956), and the right to counsel on appeal with appointed counsel for those who are indigent being guaranteed under the Constitution, Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963), the petitioner is entitled to relief. Even though his conviction took place in 1951, the above decisions are retroactive, Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967).

■ The third ground is that the members of the Negro race have been effectively and systematically excluded from membership on the grand jury and petit jury in Garza County, Texas. The record indicates that the Negro population in Garza County is 4% to 12% and Spanish surnamed people are 8% to 22%. Until the September term of 1951, when petitioner was indicted, no Negro or nonwhite had ever been a member of a grand jury or petit jury in Garza County, Texas. The record in this case reveals that the first indictment was quashed because of such exclusion on the grand jury. Another grand jury was impaneled and this grand jury actually had one member of the Negro race on it, and it was under the indictment of the second grand jury that petitioner was tried. In view of the fact that one indictment was quashed because of this defect and a subsequent grand jury having been impaneled with a member of the Negro race thereon, shows that the grand jury which indicted petitioner was not composed of members where the Negro race had been effectively and systematically excluded and this ground for relief is denied.

Although the record is not exactly clear, it appears that in the year of petitioner's trial, 1951, one Negro was summoned as a member of the petit jury panel. This same man was summoned for a period of at least five years thereafter and on each and every occasion he claimed his legal exemption of being blind and at all times was excused from petit jury service. Other than this there is no indication in the record that any Negro, during the period in question or approximately 20 years prior, was a member of or ever summoned to serve on a panel to hear cases in the District Court of Garza County, Texas.

■ Although the Negro population of Garza County is small percentagewise, there being only 242 Negroes out of a total population of 6,281 in

1950, even this small ratio would indicate that at sometime members of this race would be called to serve on the jury panel, and the fact that they were not is, in itself, indication of an exclusion of this race on a systematic basis. The token inclusion of one member of the black race who consistently claimed a legal exemption is not evidence of inclusion of this race on petit juries but rather is evidence of a systematic exclusion. It could be understood if this man had been summoned once or twice and then excused, but when he is summoned for at least five times and claims the same exemption every time, is an indication that those preparing the petit jury lists were including him for token purposes only, knowing full well that he would not be called upon to actually serve on a trial jury. Scott v. Walker, 358 F.2d 561 (5th Cir. 1966). It has long been the law that a conviction cannot stand if it is based on an indictment of a grand jury or the verdict of a petit jury from which Negroes were excluded by reason of their race. Strauder v. West Virginia, 100 U.S. 303, 25 L.Ed. 664 (1880); Pierre v. Louisiana, 306 U.S. 354, 59 S.Ct. 536, 83 L.Ed. 757 (1939); Whitus v. Georgia, 385 U.S. 545, 87 S.Ct. 643, 17 L.Ed.2d 599 (1967); 18 U.S.C. § 243. *Whitus* states that the burden is on the petitioner to prove the existence of purposeful discrimination; however, once a prima facie case is made out the burden shifts to the prosecution. The mere fact that there were no Negroes on a grand or petit jury or that there was a disproportionate number of blacks on a grand or petit panel will not establish a prima facie case; however, evidence that none, or very few Negroes have served covering a span of extended period of time will establish a prima facie case. Harris v. State, 240 F.Supp. 985 (D.C.N.C. 1965); Eubanks v. Louisiana, 356 U.S. 584, 78 S.Ct. 970, 2 L.Ed.2d 991 (1958); Arnold v. North Carolina, 376 U.S. 773, 84 S.Ct. 1032, 12 L.Ed.2d 77 (1964).

In the instant case Negroes had been excluded for a span of many years; this fact is not in controversy; for a period of about 20 years there were *no* Negroes on any panels in the district in which petitioner was convicted and in which there were 4% to 12% blacks. This establishes petitioner's prima facie case.

The fact that there was not a "purposeful" intent on the part of the jury commissions to exclude blacks from the juries they selected is not sufficient to carry the state's burden. "When a jury selection system actually results in master jury panels from which identifiable classes are grossly excluded, the subjective intent of those who develop and enforce the system is immaterial. . . . The lack of specific intent to discriminate on the part of . . . jury officials cannot offset the grossly discriminatory effect of their jury selection process." Carmical v. Craven, 457 F.2d 582 (9th Cir. 1971).

There is a "positive and affirmative duty" on jury commissions to know qualified persons throughout the community and to develop a system that will give a fair cross section of the community. Seals v. Wiman, 304 F.2d 53 (5th Cir. 1962), Mobley v. United States, 379 F.2d 768 (5th Cir. 1967). There was a systematic and deliberate exclusion of members of the Negro race from serving on trial juries in the District Court of Garza County, Texas in the year 1951, the year of petitioner's trial, and he is entitled to relief on this ground also.

It is therefore ordered that petitioner's writ be granted. It is further ordered that petitioner be given a new trial within 120 days after this judgment becomes final and all appeals thereon become final, and if he is not granted such new trial within the time specified that he be released from custody.