Hancock, Jr., J.
(dissenting). The only question on this appeal is whether racial discrimination in the prosecutor’s exercise of peremptory challenges affects the fundamental fairness of a trial or implicates societal interests in the integrity of the criminal process; if so, then under our prior decisions (see, e.g., People v Pelchat, 62 NY2d 97, 108; People v Blakley, 34 NY2d 311, 314; see also, People v Seaberg, 74 NY2d 1, 9; People v Taylor, 65 NY2d 1, 5), a defendant’s claim of such discrimination survives his guilty plea and may be raised on appeal. Because in my view it does, I dissent.
Defendant in this case is black; the complainant white. During jury selection, one black venireman was excused by the court with the consent of both counsel; the four remaining black prospective jurors were peremptorily challenged by the prosecutor. Defendant moved for a mistrial on the ground that the prosecutor had systematically excluded blacks from the jury. The trial court denied the motion after a hearing, and defendant, who protested his innocence throughout the proceedings, entered an Alford plea[1] rather than proceed to trial with an all-white jury.
At sentencing, defendant moved to withdraw his guilty plea. He argued that he was under stress when he entered his plea and believed then that he could withdraw it at any time prior to sentencing. The court denied defendant’s motion and sentenced him in accordance with the plea bargain.
*906 At the Appellate Division, defendant argued that the trial court erred in denying his motion for a mistrial. The Appellate Division acknowledged that defendant made out a prima facie case of discrimination but declined to rule further on the merits of the claim, holding, instead, that defendant had waived that claim when he pleaded guilty and waived his trial rights (146 AD2d 281, 284). The court reasoned that, "[b]y pleading guilty, a defendant * * * surrenders his constitutional rights to confrontation and trial by jury and his privilege against self-incrimination”. Because "[defendant's Bat-son’s rights are no greater than his right to a jury trial itself’, the court continued, they are "subsumed within the waiver of his right to a trial and [do] not survive his guilty plea” (id.).
The rule applied by the Appellate Division ignores the critical difference between those rights which are necessarily waived in a guilty plea and those which are not; and it conflicts with the guidelines established in our prior decisions. When a defendant enters a plea of guilty, he necessarily relinquishes his rights to a jury trial, to confront adverse witnesses and to avoid self-incrimination. The knowing and voluntary waiver of those rights is inherent in a constitutionally valid guilty plea. The very essence of pleading guilty is to forego the exercise of those three rights and to consent, instead, to a finding of guilt without a trial (see, People v Harris, 61 NY2d 9, 18-19; North Carolina v Alford, 400 US 25, 37; Boykin v Alabama, 395 US 238, 243). Put otherwise, it is simply impossible to plead guilty and, at the same time, to invoke those rights.
But a decision to plead guilty is certainly not a decision to relinquish the right to equal racial protection in the conduct of the criminal proceeding — regardless of the stage in the process. Unlike the rights to a jury trial, to confront adverse witnesses and to avoid self-incrimination, the right to equal protection need not be surrendered in order to enter a plea of guilty. The guilty plea in no sense represents a choice to forego the right to equal protection or to consent to a violation of that right earlier in the proceeding. Indeed, a decision to plead guilty may well reflect the belief that some violation has made a fair trial impossible.
Nor can it be denied that a racially neutral trial — including, specifically, the racially neutral selection of a petit jury — is essential to the fundamental fairness of the criminal process. Racial discrimination in the exercise of peremptory challenges is hardly one of those "technical defects in the proceedings” *907 that are waived by a guilty plea (see, People v Pelchat, supra, at 108); nor is it an "issue of factual guilt” rendered irrelevant by the plea (see, People v Taylor, supra, at 5). Surely, it is a fundamental flaw that implicates both the individual defendant’s entitlement to basic fairness and society’s interests in the integrity of the criminal process itself (cf., People v Seaberg, supra, at 9; People v Taylor, supra, at 5; People v Pelchat, supra, at 109; People v Blakley, supra, at 315). And, if there is any clear rule emerging from our pertinent decisions, it is that just such a "fundamental matter” (People v Taylor, supra, at 5) does survive a guilty plea.
The line we have drawn to differentiate those claims that survive a guilty plea from those that do not reflects the critical distinction between jurisdictional or constitutional defects which implicate the integrity of the process and other less fundamental flaws — e.g., evidentiary or technical matters. The test, in short, is whether the claimed defect is a matter of basic fairness affecting societal interests in our criminal justice system. Hence, the claims which this court has held are forfeited by a guilty plea include the failure to provide statutorily required notice of evidence to be introduced (People v Taylor, supra), nonjurisdictional defects in an accusatory instrument (People v Levin, 57 NY2d 1008), statutory double jeopardy (People v Prescott, 66 NY2d 216), insufficiency of the factual basis for a plea (People v Foster, 19 NY2d 150), and insufficiency of the evidence presented to a Grand Jury (People v Kazmarick, 52 NY2d 322). By contrast, the claims which we have held do survive a guilty plea include jurisdictional defects in an accusatory instrument (People v Case, 42 NY2d 98), speedy trial violations (People v Blakley, supra), constitutional double jeopardy (People v Prescott, supra), incompetency to stand trial (People v Armlin, 37 NY2d 167), illegality of a sentence (People v Francabandera, 33 NY2d 429, 434, n 2), and a prosecutor’s knowing use of an accusatory instrument dependent on false evidence (People v Pelchat, supra). A brief review of some of these decisions is instructive.
In People v Blakley (supra), our court held that a speedy trial claim always survives a guilty plea because there are " 'societal interests]’ ” in providing a speedy trial apart from the interests of the individual accused (34 NY2d, at 314 [emphasis added], quoting Barker v Bingo, 407 US 514, 519). We explained that the "[d]epravation of the right to a speedy trial may affect the fundamental fairness of a trial” (id., at 314 [emphasis added]). An unreasonable delay in commencing *908 a trial may weaken the defendant’s case through the loss of witnesses or dulling of memories and, in that event, even an innocent defendant might negotiate a plea bargain rather than risk a trial under such circumstances. To avoid such basic unfairness in the criminal process and, thereby, ensure society’s interests in speedy trials, we decided that a defendant could raise a speedy trial challenge on appeal regardless of his plea of guilty or his plea bargain to the contrary (id., at 315).
Likewise, in People v Pelchat (supra), our decision was based on the overriding societal interests in the fundamental fairness of the process itself. We held that a guilty plea does not forfeit a defendant’s claim that the prosecutor had proceeded on an indictment after learning that it rested on false evidence. We explained that, while a guilty plea forfeits the right to challenge a "latent weakness” or "infirmity” in the evidence presented to a Grand Jury (id., at 107 [emphasis added]), the rule is the opposite where the prosecutor knowingly proceeds on a defective indictment and, thus, the "integrity of the criminal justice system [is] impaired” (id., at 108). It is this concern for "integrity” in the process, not the "infirmity” itself, that is dispositive.
Our court applied a similar analysis in People v Taylor (supra), where we held that a guilty plea does forfeit a claim of prosecutorial failure to provide timely notice of evidence to be introduced at trial. We emphasized that such a claim "bears directly on defendant’s factual guilt” (65 NY2d, at 7), not on any "fundamental matter” "affect[ing] the court’s jurisdiction [or] imping[ing] on rights of constitutional dimension” (id., at 5, 6).
Finally, last year in People v Seaberg (supra), where this court enforced a defendant’s plea-bargained waiver of the right to appeal his legal sentence, we reviewed the critical differences between those claims which survive a guilty plea, such as speedy trial violations, and those which do not, such as the one at issue in that case. We said: "Society has a recognized interest in speedy trials because trial delay may result in the loss of evidence or an accused’s inability to respond to criminal charges, thereby compelling innocent persons to plead guilty out of necessity. Because of this societal interest, a defendant may not waive such claims. Similarly, a defendant may not waive the right to challenge the legality of a sentence or his competency to stand trial. These rights are recognized as a matter of fairness to the accused but they *909 also embrace the reality of fairness in the process itself and, therefore, a defendant may not waive them. The right to appeal a validly imposed sentence does not similarly implicate society’s interest in the integrity of criminal process.” (74 NY2d, at 9 [emphasis added] [citations omitted].)[2]
Hence, as stated at the outset, the only issue on this appeal is whether a prosecutor’s racially discriminatory exercise of peremptory challenges is a "fundamental matter” (People v Taylor, supra, at 5) — i.e., whether such discrimination affects the basic fairness of a criminal trial or implicates society’s interests in the integrity of the process itself. Both the Supreme Court and this court have been absolutely clear that it is. Hence, under our own decisional law, a defendant’s claim of such discrimination should survive his guilty plea and be reviewable on appeal.
In Batson v Kentucky (476 US 79), the Supreme Court left no doubt that, in its view, racial discrimination in the exercise of peremptory challenges contravenes the most fundamental protections afforded by the rights to a jury trial and to equal protection, and that such discrimination affronts society’s, as well as the defendant’s, interests in the basic fairness of the criminal justice system. As the court said: "Purposeful racial discrimination in selection of the venire violates a defendant’s rights to equal protection because it denies him the protection that a trial by jury is intended to secure. 'The very idea of a jury as a body * * * composed of the peers or equals of the persons whose rights it is selected or summoned to determine’ *910 * * * The harm from discriminatory jury selection extends beyond that inflicted on the defendant and the excluded juror to touch the entire community. Selection procedures that purposefully exclude black persons from juries undermine public confidence in the fairness of our system of justice. Discrimination within the judicial system is most pernicious because it is 'a stimulant to that race prejudice which is an impediment to securing to [black citizens] that equal justice which the law aims to secure to all others.’ ” (476 US, at 86-88 [emphasis added] [citations omitted].)[3] The court went on to stress that: "The core guarantee of equal protection, ensuring citizens that their State will not discriminate on account of race, would be meaningless were we to approve the exclusion of jurors on the basis of * * * assumptions * * * aris[ing] solely from the jurors’ race. * * * By requiring trial courts to be sensitive to the racially discriminatory use of peremptory challenges, our decision enforces the mandate of equal protection and furthers the ends of justice. In view of the heterogeneous population of our Nation, public respect for our criminal justice system and the rule of law will be strengthened if we ensure that no citizen is disqualified from jury service because of his race.” (Id., at 97-99 [emphasis added].)
The Supreme Court emphasized the same points in Ballard v United States (329 US 187). There it held that the systematic exclusion of women from jury panels, like the exclusion of a racial group, requires the reversal of a conviction despite the absence of any prejudice to the defendant in the case. The court explained that: "The injury is not limited to the defendant — there is injury to the jury system, to the law as an institution, to the community at large, and to the democratic ideal reflected in the processes of our courts.” (Id., at 195 [emphasis added].)
For like reasons, we have held today, in People v Kern (75 NY2d 638 [decided herewith]), that the prohibition against racially discriminatory peremptory challenges applies to the *911 defendant as well as to the prosecutor. Racial discrimination in the selection of a jury, whether it be by the People or the accused, injures the excluded juror, is repugnant to our citizens, and undermines their respect for judicial proceedings. As we unanimously and emphatically have recognized in Kern, what is at stake is no less than the "integrity of the criminal trial process” (id., at 652 [emphasis added]; see also, People v Kern, 149 AD2d 187, 235; People v McCray, 57 NY2d 542, 553 [Meyer, J., dissenting]).
The discrimination thus condemned and described in the foregoing decisions is precisely the kind of constitutional violation that we have repeatedly held to be reviewable on appeal from a guilty plea. Racial discrimination in jury selection is so anathema to the mandate of fundamental fairness in our criminal process that no conviction infected by it— whether that conviction be by verdict or guilty plea — should be permitted to stand (cf., People v Crimmins, 36 NY2d 230, 238; Batson v Kentucky, supra, at 100; Ballard v United States, supra, at 195). As this court, speaking through Judge Jones, said in People v Crimmins (supra): "Not only the individual defendant but the public at large is entitled to assurance that there shall be full observance and enforcement of the cardinal right of a defendant to a fair trial. The appellate courts have an overriding responsibility, never to be eschewed or lightly to be laid aside, to give that assurance. So, if in any instance, an appellate court concludes that there has been such error of a trial court, such misconduct of a prosecutor, such inadequacy of defense counsel, or such other wrong as to have operated to deny any individual defendant his fundamental right to a fair trial, the reviewing court must reverse the conviction” (36 NY2d, at 238 [emphasis added]).
There can be no question that a prosecutor’s racially discriminatory exercise of peremptory challenges is just such a "wrong” as operates to deprive a defendant of his "cardinal right” to a fair trial and, thus, requires reversal of his conviction. And it should make no difference that the defendant’s conviction, as is the case here, was based on his plea of guilty. If a defendant’s claim of racial discrimination in the selection of a jury is true, then he has certainly not been afforded the right to a fair trial. Indeed, as we have said in our decisions on speedy trial claims, a defendant may plead guilty precisely because he would otherwise be subjected to a fundamentally unfair trial.
Although the majority suggests that giving defendant the *912 right to challenge the Batson violation would amount to "an abandonment of the precedents providing guidance in this area of the law” (majority mem, at 904), it fails to identify the precedents which guide us or to make known the guiding rule. Rather, the majority’s sole answer to the dissent is that the claimed Batson violation involves a trial right and that because "we have held that the whole jury trial right may be waived * * * there is no basis in law or logic for permitting one component of the plenary right to survive a guilty plea.” (Majority mem, at 905 [citation omitted].) The proposition that by a guilty plea a defendant relinquishes his right to object to matters within the trial process necessarily presupposes the validity of the basic process. In such case the choice given the defendant is reasonable — a plea or a fair trial. But the same cannot be said when the defendant is forced to elect between a guilty plea and running the substantial risk of improper conviction at the hands of a racially unbalanced jury in a criminal process which is fundamentally flawed. Then the defendant has not had true freedom of choice. To hold that his guilty plea deprives him of the right to challenge the core illegality which destroys the validity of the basic process is neither reasonable nor just. A choice between a guilty plea and an inherently unfair trial is no choice at all.
Accordingly, I would reverse the order of the Appellate Division and remit the case to that court for a de novo consideration of defendant’s claim.
Chief Judge Wachtler and Judges Simons, Kaye, Titone and Bellacosa concur; Judge Hancock, Jr., dissents and votes to reverse in an opinion in which Judge Alexander concurs.
Order affirmed in a memorandum.

. (See, North Carolina v Alford, 400 US 25.) A defendant may voluntarily, knowingly and understandingly enter a plea of guilty even though unwilling or unable to admit participation in the acts constituting the crime, as long as the State demonstrates a strong factual basis for the plea. (See, 2 LaFave & Israel, Criminal Procedure § 20.4 [f], at 653-655.)

. The Federal test for determining whether a claim must survive a guilty plea is subject to various interpretations (see, Saltzburg, Pleas of Guilty and the Loss of Constitutional Rights: The Current Price of Pleading Guilty, 76 Mich L Rev 1265; Westen, Forfeiture by Guilty Plea—A Reply, 76 Mich L Rev 1308; 2 LaFave & Israel, Criminal Procedure § 20.6, at 676-682). But, in a long series of decisions, the Supreme Court has made clear that the racially discriminatory exercise of peremptory challenges requires the reversal of a conviction, regardless of how validly or strongly a defendant’s factual guilt has otherwise been established (see, e.g., Batson v Kentucky, 476 US 79, 100; Whitus v Georgia, 385 US 545, 549-550; Eubanks v Louisiana, 356 US 584, 589; Hernandez v Texas, 347 US 475, 477, 482; Patton v Mississippi, 332 US 463, 469; Hill v Texas, 316 US 400, 406). Indeed, the court explicitly held, in Hill v Texas (supra), that factual guilt is irrelevant where there is racial discrimination in the selection of a jury: "no State is at liberty to impose upon one charged with crime a discrimination in its trial procedure which the Constitution, and an Act of Congress passed pursuant to the Constitution, alike forbid. Nor is this Court at liberty to grant or withhold the benefits of equal protection, which the Constitution commands for all, merely as we may deem the defendant innocent or guilty.” (316 US, at 406.)

. The Supreme Court had expressed similar views in Carter v Jury Commit. (396 US 320). There it said: "Defendants in criminal proceedings do not have the only cognizable legal interest in nondiscriminatory jury selection. People excluded from juries because of their race are as much aggrieved as those indicted and tried by juries chosen under a system of racial exclusion. * * * The exclusion of Negroes from jury service because of their race is 'practically a brand upon them * * * an assertion of their inferiority * * That kind of discrimination contravenes the very idea of a jury” (id., at 329-330 [emphasis added] [nn omitted]).